Samuel J. Silverman, J.
On May 19, 1963 defendant was involved in an automobile accident in which five people were killed and one injured.
Defendant was charged on an information in the Criminal Court of the City of New York with one count of driving while intoxicated (Vehicle and Traffic Law, § 1192), one count of reckless driving (Vehicle and Traffic Law, § 1190), and two counts of leaving the scene of an accident (Vehicle and Traffic Law, § 600). After trial before a three-Judge Bench in the Criminal Court, defendant was on July 1,1963 acquitted of all four counts.
Thereafter, on August 2, 1963, defendant was indicted by the Grand Jury of Bronx County on five counts of criminal negligence in the operation of a vehicle resulting in death (Penal Law, § 1053-a), and one count of assault in the third degree, operating a vehicle in a culpably negligent manner whereby another suffers bodily injury (Penal Law, § 244).
*1067 Pursuant to section 332 of the Code of Criminal Procedure defendant entered two pleas, “ Not Guilty”, and “Former Acquittal ”.
In view of the decision of the Court of Appeals (Matter of Martinis v. Supreme Ct., 15 N Y 2d 240) on defendant’s application for an article 78 order hereinafter referred to, the plea of “ Former Acquittal ” was not ripe for decision at least until after the court and jury had heard the People’s evidence on the issues arising* on the plea of “Not GuiltyBy that time the trial had lasted three and a half weeks, and evidence on the plea of “ Not Guilty ” had been taken for three weeks. If at that point the court had sustained the plea of “ Former Acquittal ”, the issues on the plea of “ Not Guilty ” would not have been submitted to the jury; and if thereafter an appellate court had decided that the plea of “ Former Acquittal ” should have been overruled, a new trial would have been necessary. On the other hand, if a jury verdict were obtained as to the issues arising* on the plea of “ Not Guilty”, then if an appellate court ruled that the plea of ‘ ‘ Former Acquittal ’ ’ should be overruled, no new trial would be necessary, but the appellate court could simply direct "judgment in accordance with the verdict (Code Crim. Pro., § 543). Accordingly, in the exercise of the court’s discretion as to the order of disposition of the issues (People v. Connor, 142 N. Y. 130, 134 [1894]), I postponed the hearing and determination of the plea of “Former Acquittal” until after the jury verdict on the plea of “ Not Guilty
As it turned out, the jury was unable to agree upon a verdict on the issues arising on the plea of “ Not Guilty ”.
That still leaves for disposition the plea of “ Former Acquittal ’ ’.
There is this difference in the procedural situation from what it was before the submission to the jury: The considerations, which led the court two weeks ago to postpone the issue of “ Former Acquittal ”, now require that the issue be determined, i.e., only if the plea is now determined can a perhaps unnecessary new trial be avoided.
The parties and the court are in agreement that the plea of ‘ ‘ Former Acquittal ’ ’ in this case presents no question of fact for determination by a jury, and the parties have therefore stipulated that the court without a jury shall decide the issue. The additional evidence on this plea consists simply of the record of the trial in the Criminal Court.
Defendant contends that driving “in a reckless or culpably negligent manner ” under section 1053-a of the Penal Law and driving “ in a culpably negligent manner ” under section 244 of *1068 the Penal Law essential elements of the crimes for which he is indicted in this court, are synonymous with “ reckless driving” under section 1190 of the Vehicle and Traffic Law, the crime of which he was acquitted in the Criminal Court, and that having been found not guilty of reckless driving at all, he cannot now be found guilty of culpable negligence, i.e., reckless driving, resulting in death or bodily injury. This is an aspect of a defense of double jeopardy. •
After the indictment in this case, but before this trial, defendant applied under article 78 of the OPLR for an order prohibiting this court, on the ground of double jeopardy, from proceeding with the trial of the indictment. By a vote of 4 to 3, the Court of Appeals denied this application (Matter of Martinis v. Supreme Ct., 15 N Y 2d 240 [1965]). Three opinions were delivered by the Judges of the Court of Appeals, stating the views of the different Judges on the issue of double jeopardy.
As a Trial Judge I am, of course, bound by the law as laid down by the Court of Appeals. We have here a decision of the Court of Appeals considering the precise question of the applicability of the defense of double jeopardy to this very ease, and giving the answers of all seven Judges of that court to this question.
I could wish the answer of the Court of Appeals were not quite so Delphic, or at least that the court had spoken with fewer voices. But the views of each Judge have been stated, and I think one can see reasonably clearly what the view of a majority of the court is.
Six of the seven Judges of the Court of Appeals felt that the issue could be decided regardless of what evidence should be adduced on the trial. Three of these six Judges gave their view that the defense of double jeopardy (and thus the plea of “Former Acquittal”) was bad, and that therefore the trial should not be prohibited. The other three of these six Judges gave their view that the defense was good, and that therefore the trial should be prohibited. The seventh Judge, Judge Burke, was of the view that whether the plea was good or bad depended upon the evidence that would be adduced at the trial, and that therefore the trial should not be prohibited.
Assuming that the Judges of the Court of Appeals do not change their views on further consideration, it would appear that three Judges of the court consider the defense of double jeopardy good, and three consider it bad. Thus the view of Judge Burke, the seventh Judge, becomes critical, as his view either way will be the view of the fourth Judge making a majority *1069 of the Court of Appeals. I think I am. therefore justified in concentrating on Judge Burke’s opinion.
(As the Court of Appeals did not deem it necessary to distinguish for the purposes of its analysis between double jeopardy, former acquittal, and collateral estoppel, I shall not do so either.)
As I have said, Judge Burke’s view was that the defense of double jeopardy was good or bad, depending on what the evidence at the trial should be. But he went further and stated the test that he thought determinative. He stated the test as follows (pp. 251-252): “ There are cases which recognize that it is possible to convict a defendant of a violation of section 1053-a of the Penal Law without the necessity of proving the crime defined in section 1190 of the Vehicle and Traffic Law. * * * If it appears on the trial that the People in showing culpable negligence rely on proof of the same inseparable acts the People attempted to establish in the prosecution under the Vehicle and Traffic Law, it would be clear at that time that jeopardy had attached. * * * The test is whether the defendant has committed inseparable acts made punishable by more than one statute or whether he had committed separate and distinct acts each of which was a violation of law. Under the former situation the defendant would be twice in jeopardy, under the latter he would not.” As I understand it, by this Judge Burke meant that if the conduct claimed to be culpable negligence in the case in this court is the same conduct claimed to be reckless driving in the case in the Criminal Court, then the defense of double jeopardy is good; otherwise not.
The application of this test requires merely a comparison of the records in the two cases. And that comparison indicates that by Judge Burke’s test the defense is good.
Defendant’s acts claimed to be culpable negligence on the trial before me consisted of (1) speeding — at speeds variously estimated to be 60, 75 and 90 miles per hour; (2) weaving or changing lanes; and (3) drinking alcoholic beverages before the accident so that defendant was either intoxicated or his ability to operate his car was at least impaired by the consumption of alcohol (cf. Vehicle and Traffic Law, § 1192, subds. 1, 2). These are the same acts and the same conduct testified to in the Criminal Court case, and largely by the same witnesses. In the Criminal Court, as here, the witnesses Lee, Martin Malkin, Celia Silverman and Crumrine, testified as to the fast driving, and gave their estimates of speed (Lee, over the speed limit; Malkin, 75 miles per hour; Silverman, 90 miles per hour; *1070 Crmnrine “ fast ”). In that court as here the witness Lee testified to the defendant’s changing lanes. In that court as here the defendant’s drinking beer in two places on the afternoon before the accident was established by the witness Cross and by the defendant’s own statement. In that court as here civilian witnesses and police officers testified to their observations of the defendant and of his conduct after the accident as indicative of whether defendant was under the influence of alcohol. Such testimony was given as to defendant’s appearance and behavior at the scene of the accident, at Mrs. Smith’s apartment, and at the police station, including the Police Department tests as to sobriety or intoxication, and the fight with photographers at the station house.
Some small differences there were, of course, in the testimony. But surely the validity of the defense cannot turn on differences such as whether the defendant drank four, five or six bottles of beer that afternoon or did or did not have some whiskey. The issue as to drinking in both cases was whether the defendant was so far under the influence of liquor as to cause him to drive recklessly. On this point of drinking, I suppose, it could conceivably be argued that perhaps the Criminal Court considered the evidence as to drinking only as to its bearing on the charge of driving while intoxicated, and not on the reckless driving charge. There is, however, nothing to indicate that the Criminal Court Judges were so limiting their consideration or that anyone suggested that they should; and it is not at all clear that this would constitute a valid distinction in law. But in any event, as the Appellate Division, Third Department pointed out in People v. Fink (18 A D 2d 220 [1963]), in connection with a charge of violation of section 1053-a of the Penal . Law the consumption of alcohol prior to the driving is relevant only insofar as it plays some effective role in the occurrance of the accident, i.e., only if it “ was a cause for [the defendant’s] operating his automobile culpably and recklessly ” (p. 224); and the Criminal Court held the defendant was not guilty of recldess driving.
Two other acts were suggested by the District Attorney as evidence of culpable negligence: driving noisily without a muffler, and racing with a white Ford. I ruled as a matter of law that neither of these was to be considered by the jury as an element of culpable negligence because (a) there was no evidence that driving without a muffler in any way contributed to causing the accident; and (b) there was no evidence that would warrant the jury in finding that defendant was racing the white Ford. More importantly for our present purposes, substan *1071 tially the same evidence as was presented in this court on these matters was before the Criminal Court.
To a substantial extent the witnesses in the two trials overlapped. They were not identical; in each trial there were some witnesses who did not testify in the other trial. The conduct charged in the two cases is the same, however, and that is the critical test.
It thus appears to me that applying Judge Burke’s test leads to the result that the defense of double jeopardy is good, and thus that the view of a majority of the Court of Appeals is that the defense is good. Accordingly, the plea of “ Former Acquittal ” must be decided in defendant’s favor.
While it is not a reason for this decision, I may add that one practical consequence of this decision is that it makes possible a final determination of the issue of former jeopardy by direct appeal, before another long trial is held (Code Grim. Pro., § 518, subds. 3, 5; cf. § 437). And if my reading of the views of the Judges of the Court of Appeals proves correct, then no new trial will be necessary.
As a judicial opinion I suppose I might end here. But there has been such public discussion and I am afraid public misgivings about this case, that I shall take the liberty of restating a few elementary principles with which all men of law — and I think all responsible citizens who stop to think about it — are in agreement.
There is the famous language in Magna Carta, written just 750 years ago: “No free man shall be taken or imprisoned * * * save by the lawful judgment of his peers or the law of the land.”
This is the great statement of a regime of law — one set of rules by which all persons shall be judged. Law means nothing unless it means the same law for all.
This principle is restated in the Fourteenth Amendment to the Federal Constitution: ‘ ‘ nor shall any State * * * deny to any person within its jurisdiction the equal protection of the laws.” And our State Constitution provides (art. I, § 11): “ No person shall be denied the equal protection of the laws of this state ”.
One of the protections of our law is the rule against double jeopardy. All persons are entitled to the equal protection of that law.
Judges may differ as to whether the rule of double jeopardy properly applies to the facts of this case; the Judges of our Court of Appeals have differed on this point. But there is no difference of opinion either among Judges or among responsible *1072 citizens that, whatever the law is determined to be, it must be equally applied without regard to person.
I am aware that this decision may be unpopular. It is a historic function of Judges to render unpopular decisions when required by the principle of equal justice under law. That is why the decision of cases is entrusted to courts and not to popular elections. Judges being human, there have occasionally been Judges who rendered “ popular ” decisions in violation of this principle; they have become the archetypes of the unworthy Judge.
The plea of “ Former Acquittal” is sustained. The indictment is dismissed on the ground of double jeopardy. The defendant is discharged.