THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRED FERNANDEZ, Appellant.

Second Department, December 3, 1973.

*Eleanor Jackson Piel* for appellant.

*Michael F. Armstrong, District Attorney* (*Martin L. Bracken* of counsel), for respondent.

HOPKINS, Acting P. J.   The defendant was indicted on October 11, 1967 for the crimes of assault in the second degree and resisting arrest (former Penal Law, §§ 242, 1851).   After a trial before a jury, he was found guilty of the charges on August 2, 1972 and sentenced on August 30, 1972.   He had been previously tried and convicted in the Criminal Court of the City of New York for disorderly conduct arising from the same incident out of which the indictment originated, but upon appeal that conviction was reversed and the complaint was dismissed.

The defendant now contends, on grounds of former jeopardy, *res judicata* and collateral estoppel, that his conviction for

assault in the second degree and resisting arrest cannot stand. We hold that under the present statute governing the effect of a previous prosecution (CPL art. 40) the judgment must be reversed and the indictment dismissed. We do not reach the issues of *res judicata* or collateral estoppel.

Both the indictment and the charge of disorderly conduct concern an incident occurring on the evening of May 27, 1967 at Northern Boulevard and 104th Street, Queens. The defendant with 30 other persons gathered at that intersection. An altercation with the police followed. The defendant was immediately arrested by Patrolman Hamilton and booked for disorderly conduct (former Penal Law, § 722, subd. 3). In his complaint, Hamilton alleged that the defendant, while in lawful custody, had resisted arrest and struck him on the head with a clenched fist. Thereafter, as above stated, the defendant was indicted on October 11, 1967 for assault in the second degree and resisting arrest (former Penal Law, §§ 242, 1851). In the first count it was alleged that the defendant, with the intent to resist arrest, had assaulted Hamilton; and the second count alleged that the defendant had resisted Hamilton in the latter's lawful performance of his duties.

The defendant was brought to trial first on the charge of disorderly conduct. He was found guilty on November 17, 1967 in the Criminal Court and sentenced on December 6, 1967. That judgment was reversed by the Appellate Term on December 6, 1968, and a new trial was ordered, with the following memorandum: " Judgment of conviction unanimously reversed on the law and a new trial ordered. In the light of the testimony of defendant's four witnesses, who contradicted the arresting officer's version of the facts and the failure of the People to call the other officer who was present at the scene and during the trial, requires a new trial in the interests of justice (*People* v. *Silverberg*, 10 A D 2d 688; *People* v. *Dropkin*, 261 App. Div. 223)."

The defendant was again tried on the charge of disorderly conduct and was found guilty on March 16, 1970. At the second trial Hamilton testified that the defendant, in a group of 30 people, had been blocking pedestrian traffic and using profanity; that the defendant refused to move at first, but then he and the others went to a point up the block 100 feet away where some of the group began throwing rocks and bottles at Hamilton; that Hamilton heard the defendant call him an opprobrious epithet and Hamilton then placed the defendant under arrest; that the defendant grabbed Hamilton around the neck

and punched his head; and that Hamilton and his partner, Wilkes, then removed the defendant from the scene.[1] Wilkes did not testify. The defendant and three other witnesses denied that he had blocked the sidewalk or used profanity and testified that the police officers had been chasing others and assaulted him without provocation and that the defendant defended himself from attack.

The second conviction for disorderly conduct was again reversed by the Appellate Term on October 20, 1970 and the complaint this time was dismissed on the ground that the defendant's guilt had not been established beyond a reasonable doubt. In the interim, the indictment remained pending.[2] He was brought to trial on the indictment on July 11, 1972.[3] At the outset he moved to dismiss the indictment on the grounds of delay in the prosecution and double jeopardy. That motion was denied. However, a mistrial was declared by the Criminal Term upon the disclosure of the dismissal of the charge of disorderly conduct during the opening statement of the defendant's counsel.[4]

The defendant then moved on July 25, 1972 for a dismissal of the indictment, claiming that the provisions of the Criminal Procedure Law barred further prosecution (CPL 40.40 [eff. Sept. 1, 1971]). That motion was denied at sentence. The defendant was tried during the period from July 26, 1972 to August 2, 1972 before a jury and convicted on both counts.

In substance, the evidence presented by the prosecution established the same proof that was before the Criminal Court on the

1. The transcript of the second trial in the Criminal Court, as well as the transcript in the first trial, is before us as a court exhibit.

2. The defendant, however, did not remain passive after the conviction at the second trial. On April 14, 1970 he moved to dismiss the indictment on the grounds of failure to prosecute, double jeopardy and collateral estoppel. That motion was denied. On May 4, 1970 he instituted a proceeding under article 78 of the CPLR in this court to prohibit the trial of the indictment because of double jeopardy and collateral estoppel. That proceeding was dismissed and the Court of Appeals dismissed the appeal from the order thereon.

3. The delay is at least partially explicable by the defendant's motions and applications after the dismissal by the Appellate Term. On October 28, 1970 he moved a second time to dismiss the indictment on account of double jeopardy and collateral estoppel. That motion was denied. On November 28, 1970 he again sought prohibition of the trial by a proceeding in this court. That proceeding was dismissed. An appeal to the Court of Appeals was dismissed on February 18, 1971 and the Supreme Court of the United States denied certiorari on June 14, 1971.

4. On this appeal the defendant argues that the mistrial was improperly declared and that further prosecution constitutes double jeopardy. In view of our disposition of the appeal, we do not consider this contention.

trial of the charge of disorderly conduct. Hamilton testified to the same facts he had previously stated at the two trials in the Criminal Court. However, his testimony was this time sup-. ported by Wilkes, who stated that he and Hamilton had attempted to disperse the group on the sidewalk, including the defendant; that the crowd finally moved on and he lost sight of Hamilton; that he heard rocks and bottles striking the ground; and that he saw the defendant punching Hamilton about the head, whereupon he arrested the defendant.

The proof presented by the defendant was substantially the same as that established by him at the Criminal Court on the trials for disorderly conduct. However, he did not himself testify and his witnesses were not the same persons who had testified at the Criminal Court.[5]

Though we mark these differences in the identity of the witnesses and in the testimony presented in the two courts, we do so not so as to suggest that these differences create a decisive effect on the claim of former jeopardy, but rather to indicate that the gist of the issues before both courts was the same. The allegations of the complaint charging disorderly conduct, read against the two counts of the indictment, have essentially the same elements; and the testimony at the trials advanced the same representations of the occurrence on the part of both the prosecution and the defendant. It is doubtful, however, that these traditional considerations of identity of offense and identity of evidence now operate in the concept of former jeopardy as significantly as they did in the past.

The ancient injunction against repeated attempts by the sovereignty to convict an individual has steadily been enlarged (*Ashe* v. *Swenson,* 397 U. S. 436, 450–451). The colonists adapted the English notion restricting its use to capital offenses so as to apply it as well to noncapital cases (Sigler, Double Jeopardy, pp. 21–27). Our State Constitution preserves it as a guarantee to the individual (N. Y. Const., art. I, § 6), but leaves its ultimate definition to the Legislature. And, although the Federal Constitution embodied it in the Bill of Rights, it was not until 1969 that it was held to be enforceable against the States through the Fourteenth Amendment (*Benton* v. *Maryland,* 395 U. S. 784). The limits of the application of the Federal guarantee by the States rest on the determination of fun-

5. At the second trial in the Criminal Court, the defendant himself, Annette Spencer, William James and James Frank Ahart testified for the defense. At the trial in the Supreme Court, Ramon Jimenez, Raymond Gilyard and Annette Spencer testified for the defense.

damental fairness in the Federal view (cf. *Ashe* v. *Swenson, supra,* pp. 442–443).

As Professor (now Judge) Denzer makes clear, the meaning of double jeopardy in New York prior to the enactment of the Criminal Procedure Law — soon after the decision in *Benton* (*supra*) — hinged on the single or combined force of two distinct tests (Practice Commentary on ·CPL 40.20 in McKinney's Cons. Laws of N. Y., Book 11A, pp. 105–108). The first places emphasis on the identity of the elements of the offenses for which the defendant was tried (cf. *Matter of Martinis* v. *Supreme Ct. of State of N. Y.,* 15 N Y 2d 240) and the second takes as its focus the identity of the evidence to establish the ·offenses (cf. *People* v. *Martinis,* 46 Misc 2d 1066, affd. 25 A D 2d 620; ·*Matter of Mack* v. *Court of Gen. Sessions of County of N. Y.,* 14 A D 2d 98; *People* v. *Spitzer,* 148 Misc. 97, 101). The judicial task was further complicated by the statute regulating punishment for an act made criminal in different ways (former Penal Law, § 1938; see *People* v. *Snyder,* 241 N. Y. 81, 83).

As a result of these varying and at times conflicting standards, there were decisions, particularly in cases involving prosecutions for assault and related offenses arising out of the same incident, which were difficult to reconcile (cf. *People* v. *Fennell,* 10 A D 2d 78, with *People ex rel. Ticineto* v. *Brewster,* 241 App. Div. 467, and *People* v. *Murray,* 168 Misc. 737; see, generally, Note, Twice in Jeopardy, 75 Yale L. J. 262). Hence, the Criminal Procedure Law assumed a divergent approach to the question and it is to its provisions that the defendant refers in seeking reversal.

The prosecution contends, however, that the defendant cannot seek the protection of the Criminal Procedure Law, since the indictment was filed prior to its enactment and effective date (L. 1970, chs. 996, 997, eff. Sept. 1, 1971). We do not read the statute so narrowly. Though the indictment was filed in 1967, the trial was held in 1972. If there were double jeopardy imposed on the defendant, it was at the trial that it attached, for it was at that time that the defendant was subjected to a second prosecution.[6] The statute applies to " (a) all criminal actions and proceedings commenced prior to the effective date thereof but still pending on such date, and (b) all appeals * * * commenced upon or after such effective date which relate or attach to criminal actions and proceedings commenced or concluded prior to such effective date; provided that, if appli-

6. The same can be said, of course, with respect to the mistrial which began on July 11, 1972.

cation of such provisions in any particular case would not be feasible or would work injustice, the provisions of the code of criminal procedure apply thereto " (CPL 1.10, subd. 2).

Accordingly, we are directed to employ the Criminal Procedure Law, unless it " would not be feasible or would work injustice ". The use of this statute with respect to the indictment does not interfere with any procedural step in its prosecution; nor is there any question of fact the resolution of which would be disturbed by its provisions, but merely a question of law concerning which the defendant has maintained a consistent position. We see nothing unfeasible, therefore, in applying this statute. Nor are we persuaded that it will work injustice. We cannot ignore a constitutional guarantee, one that is based on a public policy " that a defendant should not be harassed by a succession of trials " (*Matter of Nolan* v. *Court of Gen. Sessions of County of N. Y.*, 11 N Y 2d 114, 119). Though we must put in the balance justice as it bears both to the prosecution and to the defendant, we think that the most recent interpretation of the constitutional command as incorporated in legislation designed to give it effect must be applied in favor of the individual.[7]

The new standard whereby we are to judge the issue of double jeopardy adopts an approach looking not at the components of offenses arising out of the same transaction or the evidence necessary to establish those offenses, but at the nature of the transaction itself. The standard, in the words of Mr. Justice BRENNAN, " not only enforces the ancient prohibition against vexatious multiple prosecutions embodied in the Double Jeopardy Clause, but responds as well to the increasingly widespread recognition that the consolidation in one lawsuit of all issues arising out of a single transaction or occurrence best promotes justice, economy, and convenience " (*Ashe* v. *Swenson*, 397 U. S. 436, 454, *supra*; cf. Model Penal Code, American Law Inst., Proposed Official Draft, § 1.09).

Thus, the statute provides that " a person may not be separately prosecuted for two offenses based upon the same act or criminal transaction " (CPL 40.20, subd. 2) and then, as Judge DENZER puts it, " postulates certain exceptions to that rule "

---

7. Though in the overview the prior dismissal of the disorderly conduct charge may not be a critical factor in determining injustice (i.e., a former conviction in the context of double jeopardy would as well satisfy the test), it is worth noting that CPL 1.10 (subd. 2) refers to " any particular case ". The prior dismissal in this sense leads towards injustice to the defendant if the Criminal Procedure Law is not applied.

(Practice Commentary on CPL 40.20 in McKinney's Cons. Laws of N. Y., Book 11A, p. 107, *supra*). We find that the exceptions to the general rule are not apposite here.[8] The impetus of the statute, consequently, exempts a person from multiple prosecutions founded on the same transaction, unless an exception plainly renders the general rule inapplicable.

Certain of the exceptions are clearly aimed at situations not relevant here. Thus, paragraph (c) of subdivision 2 of CPL 40.20 relates to offenses dealing with contraband; paragraph (d) relates to an assault resulting in death; paragraph (e) relates to injury to different victims;[9] and paragraph (f) relates to a prior prosecution in another jurisdiction. However, paragraphs (a) and (b) do have surface similarities to the present appeal which must be considered.

Paragraph (a) excepts the situation where the offenses "have substantially different elements and the acts establishing one offense are in the main clearly distinguishable from those establishing the other." We think that disorderly conduct, an offense stemming from the common-law concept of a breach of the peace, includes elements generally associated with assault and resisting arrest (former Penal Law, § 722; see *People* v. *Perry*, 265 N. Y. 362, 364–365; cf. former Penal Law, §§ 242, 1851). Indeed, both

---

8. CPL 40.20 in its entirety reads as follows:

"§ 40.20. Previous prosecution; when a bar to second prosecution.

"1. A person may not be twice prosecuted for the same offense.

"2. A person may not be separately prosecuted for two offenses based upon the same act or criminal transaction unless:

" (a) The offenses as defined have substantially different elements and the acts establishing one offense are in the main clearly distinguishable from those establishing the other; or

" (b) Each of the offenses as defined contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil; or

" (c) One of such offenses consists of criminal possession of contraband matter and the other offense is one involving the use of such contraband matter, other than a sale thereof; or

" (d) One of the offenses is assault or some other offense resulting in physical injury to a person, and the other offense is one of homicide based upon the death of such person from the same physical injury, and such death occurs after a prosecution for the assault or other non-homicide offense; or

" (e) Each offense involves death, injury, loss or other consequence to a different victim; or

"(f) One of the offenses consists of a violation of a statutory provision of another jurisdiction, which offense has been prosecuted in such other jurisdiction and has there been terminated by a court order expressly founded upon insufficiency of evidence to establish some element of such offense which is not an element of the other offense, defined by the laws of this state."

9. Both the indictment and the complaint allege offenses directed at Hamilton.

the allegations of the complaint and of the indictment state acts which are almost identical.

Paragraph (b) excepts the situation when each of the offenses "contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil." Admittedly, the offense of disorderly conduct does not contain all the elements of assault, even as the latter is different from resisting arrest. The exception, however, does not end there; it requires as an additional condition that the purposes underlying each of the offenses be directed toward materially different evils. But the evil to be inhibited — the prevalence of violence and public disturbance — is common to all three of the offenses with which the defendant was charged. All of the offenses represent an aspect, to a varying degree of culpability, of deterring and punishing behavior likely to result in injury and disorder in the community. It is significant in this regard to note that all of the offenses charged grow out of acts nearly simultaneous in execution (cf. CPL 40.10, subd. 2).

Though the defendant leans on CPL 40.40 — prohibiting separate prosecutions for offenses arising out of the same transaction if they are joinable in one accusatory instrument — we do not find it applicable to the defendant. Prior to the effective date of the Criminal Procedure Law, the Supreme Court could not entertain the prosecution of disorderly conduct (Code Crim. Pro., § 22). At the time of the indictment, accordingly, the offense of disorderly conduct could not have been joined with the counts of assault in the second degree and resisting arrest. By the provisions of the Criminal Procedure Law, joinder of all the offenses charged against the defendant could have been made in one indictment (CPL 10.20, 200.20). Since the trial and the dismissal of the disorderly conduct charge occurred long before September 1, 1971, when the Criminal Procedure law became effective, it obviously would be unfeasible and unfair to apply the Criminal Procedure Law in this respect (cf. CPL 1.10, subd. 2). Nevertheless, CPL 40.40 illustrates the policy of avoiding harassment of the individual by successive prosecution, even though not literally pertinent here.

Here, though the indictment for the more serious crimes charged against the defendant was pending since 1967, the prosecution chose to try the defendant on the complaint for disorderly conduct. Even after the first conviction was reversed on appeal, the prosecution again elected to proceed on the disorderly conduct charge. Not until the ultimate reversal and dismissal of

that charge did the prosecution seek vigorously to try the defendant under the indictment. Even if CPL 40.40 cannot literally be applied in favor of the defendant, its spirit pervades the provisions of CPL 40.20 which must be enforced on behalf of the defendant.

For these reasons, we hold that on grounds of double jeopardy, the judgment must be reversed, on the law, and the indictment dismissed. We have not passed upon any question of fact, no such questions having been raised by the defendant.

LATHAM, SHAPIRO, CHRIST and BENJAMIN, JJ., concur.

Judgment of the Supreme Court, Queens County, rendered August 30, 1972, reversed, on the law, and indictment dismissed.