In the Matter of HENRY KESSLER, Appellant, v CHESTER D. SHERMAN et al., as Justices of the Justice Court, Town of Shelter Island, Respondents, and LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Intervenor-Respondent.

Second Department, December 31, 1975

*Smith, Finkelstein, Lundberg, Baisley & Yakaboski (Robert C. Crimmins* and *Howard M. Finkelstein* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General (Joseph J. Zedrosser, Philip Weinberg* and *Samuel A. Hirshowitz* of counsel), for intervenor-respondent.

MARGETT, J. On September 10, 1973, the petitioner, a part owner of property located at Hay Beach Point, Shelter Island, New York, directed the operation of a backhoe as it dredged a channel on the property and deposited the dredged material alongside. The petitioner had no formal permit for this activity; on November 8, 1973 an information was filed in the Shelter Island Justice Court by the Attorney-General charging that, from September 12, 1973, and continously thereafter, the

petitioner had altered the state of a certain tidal wetland in the Town of Shelter Island and the area immediately adjacent thereto, without a State permit, in violation of the State Tidal Wetlands Act (Environmental Conservation Law, § 25-0202). Supporting depositions of two State Department of Environmental Conservation employees were also filed.

On December 26, 1973 another information was filed in substitution of the first, again relating to violation of the State Tidal Wetlands Act on September 12, 1973, and continuously thereafter. Finally, on March 4, 1974, this second information was amended to its present form, in which it charges the petitioner with "altering the state of a certain tidal wetland and the area immediately adjacent" thereto, on September 10, 11 and 12, 1973 and continuously thereafter, without a State permit, in violation of the State Tidal Wetlands Act.

In the meantime, on November 26, 1973, a complaint had been filed in the Shelter Island Justice Court, charging the petitioner with having violated the Wetlands Ordinance of the Town of Shelter Island on September 10, 1973 by conducting operations on wetlands within the town without having obtained a permit issued by authority of the town board. After transfer of the town complaint to the Southampton Justice Court for trial, the petitioner was acquitted by Town Justice KENDRICK, sitting without a jury, on April 23, 1974. The acquittal was apparently based on the petitioner's defense that he had been given permission by the Town of Shelter Island to dredge the channel on Hay Beach Point.

When the People continued to press the second case against the petitioner for altering the same wetland at the same time, he brought this proceeding pursuant to CPLR article 78. The petitioner urged at the Special Term that, if the trial of the charges were to take place, he would be separately prosecuted for offenses based upon the same act or criminal transaction, in violation of his statutory and constitutional rights against double jeopardy (NY Const, art I, § 6; CPL 40.20). The Special Term disagreed and denied the petition. We affirm.

The New York State Tidal Wetlands Act is totally separate and distinct from the Town of Shelter Island's Wetlands Ordinance, ordinance No. 24, as a matter of law, in that each offense contains an element which is not an element of the other offense; by reason of the foregoing, the trial of the petitioner under ECL 25-0101 *et seq.* will not result in double jeopardy.

The statute relevant to this matter is paragraph (b) of subdivision 2 of CPL 40.20. In pertinent part, that paragraph states that a person may not be separately prosecuted for two offenses based upon the same act or criminal transaction *unless* (1) each of the offenses, as defined, contains an element which is not an element of the other, and (2) the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil.

The facts before us fit within the purview of that statutory exception to the double jeopardy rule. The town prosecution was based upon acts committed only on wetlands, as they are defined in the town's ordinance, whereas the State prosecution is based upon acts committed upon wetlands as they are defined in the State Tidal Wetlands Act, and areas adjacent thereto, which adjacent areas are not covered by the town ordinance. The elements of the offense in the State prosecution involve more than the failure to apply for a State permit. ECL 25-0202 creates a moratorium on alteration of the state of any tidal wetland, as defined in ECL 25-0103, or of areas immediately adjacent thereto, pending the completion of an inventory of such wetlands and the promulgation of land-use regulations, unless a permit is obtained from the State Commissioner. The State statutes set forth specific procedures and standards regarding applications for and grants of State permits. An applicant for a moratorium permit must make, among other things, a showing of hardship. The provision specifically states that any such moratorium permit shall be in addition to, and not in lieu of, any permits which may be required by any municipality within which a wetland may lie.

Thus, the prosecutions are not the same in law because they are based upon separate and distinct statutes, namely, ECL article 25 and the Shelter Island Wetlands Ordinance. The petitioner is being prosecuted for two different offenses based upon the same act or criminal transaction. Under the circumstances of this case, the second prosecution is not violative of any constitutional or statutory protection (see *Matter of Klein v Murtagh*, 44 AD2d 465, affd 34 NY2d 988). Accordingly, the second prosecution may proceed as it does not violate the petitioner's rights against double jeopardy.

COHALAN, J. (dissenting). I would reverse the judgment and dismiss the information lodged in the Shelter Island Justice Court which charges the petitioner with a violation of the Environmental Conservation Law (ECL).

The petitioner, Kessler, is a tenant in common, along with others, of certain real property situate at Hay Beach Point, in the Town of Shelter Island, in Suffolk County. On September 10, 1973 he caused a portion of wetland at that location to be dredged. The dredged material was deposited in an adjacent spoil area, also a wetland, and was permitted to remain there.

Such an act is and was prohibited by the town's Wetlands Ordinance unless a permit had been previously obtained, based upon a formal written application. Although Kessler had not made a formal application for a permit, he had in his possession a letter from an administrative officer, the Chairman of the Town Planning Board, dated July 20, 1973, which, in pertinent part, reads:

"Dear Mr. Kessler:

Please be advised as per·agreements in covenant filed with the map of Section 10, Hay Beach Point, it was agreed that you would open the mouth to the pond at Hay Beach Point and it would be the Town's responsibility to keep it open from that point on. This is in accordance with our telephone conversation of earlier this week.

Very truly yours,

SHELTER ISLAND PLANNING BOARD<br>(sgd.) Lester Van Wicklen<br>Chairman".

The petitioner acted pursuant to the contents of that letter.

An accusatory instrument was duly filed against Kessler charging him with a violation of the ordinance. At the same time, the petitioner was arraigned in the same court, at the instance of the State Attorney-General, on the charge of violating the ECL. Because the Town Justice presiding was also a member of the Town Board, the petitioner successfully moved for a change of venue to the Town of Southampton for trial. There, after a nonjury trial before a Southampton Justice (an attorney at law) held on April 23, 1974, Kessler was declared not guilty.

On May 3, 1974 the Town Justice issued a written decision. The penultimate paragraph (of five) reads: *"There was no proof of wilful disobedience of the ordinance nor of intention to violate its provisions.* The import of said letter (defendant's Exhibit 1) must be gathered from the existing background of recorded instruments which affect the defendant and said

Town and negotiations which defendant had conducted with various officials of said Town. From this background and from the wording of the said writing it was certainly reasonable for the defendant to conclude that the said letter of the Shelter Island Planning Board (defendant's Exhibit 1) granted him authority to perform the dredging operation" (emphasis supplied).

Both the town and the State charged the petitioner with doing the act complained of "intentionally", "knowingly", "recklessly" and "with criminal negligence". The State added the word "unlawfully" and the town added the word "wrongfully".

The trial court found, as a matter of fact and law, that there was no proof of an intention to violate the provisions of the ordinance. In the face of this decision and the letter in evidence (Exhibit 1) could any other court find differently? Is it not an adjudication on the merits? There can be no crime committed without a specific or general intent and the Town Justice found no proof of any intent whatsoever.

Contrary to the position of the Attorney-General, Kessler is entitled, also, to the benefit of the application of section 15.20 (subd 2, par [b]) of the Penal Law, which states: "15.20. Effect of ignorance or mistake upon liability. * * * 2. A person is not relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief that it does not, as a matter of law, constitute an offense, unless such mistaken belief is founded upon * * * (b) an administrative order or grant of permission".

Since that issue has already been resolved in his favor, exposure to a second trial would merely result in unwarranted expense to the petitioner, with little or no prospect of prosecutorial success. Nevertheless, the Attorney-General doggedly pursues his object. He points to three paragraphs of subdivision 2 of CPL 40.20 which, he asserts, support his position. These paragraphs read:

"40.20. Previous prosecution; when a bar to second prosecution. * * *

"2. A person may not be separately prosecuted for two offenses based upon the same act or criminal transaction unless:

"(a) The offenses as defined have substantially different

elements and the acts establishing one offense are in the main clearly distinguishable from those establishing the other; or

"(b) Each of the offenses as defined contains an element which is not an element of the other, and the statutory provisions defining such offenses are designed to prevent very different kinds of harm or evil; or * * *

"(f) One of the offenses consists of a violation of a statutory provision of another jurisdiction, which offense has been prosecuted in such other jurisdiction and has there been terminated by a court order expressly founded upon insufficiency of evidence to establish some element of such offense which is not an element of the other offense, defined by the laws of this state."

Whether paragraphs (a) and/or (b) apply can be gleaned by setting the ordinance and the statute side by side. They follow:

| TOWN ORDINANCE | STATE (ECL) LAW |
|---|---|
| "Section 20. Permit required. "Notwithstanding any prior course of conduct or permission granted, *no person shall conduct operations on any wetlands in the Town of Shelter Island,* unless he shall first obtain a written permit therefor issued by authority of the Town Board as hereinafter provided, and only while such permit remains in effect" (emphasis supplied). | "Section 25-0202 (subd. 1). *"No person shall alter the state of any tidal wetland or of any area immediately adjacent to said wetland* as the commissioner may reasonably deem necessary to preserve in order to effectuate the policies and provisions of this act * * * unless a permit for such alteration shall have been obtained pursuant to section 15-0505" (emphasis supplied). |

As to paragraph (a) of subdivision 2 of CPL 40.20, if a person "shall conduct operations on any wetlands" he must of necessity "alter the state of any tidal wetland or of any area immediately adjacent to said wetland"; and, by the same reasoning, if a person "shall alter", etc., he, of necessity, "shall conduct operations."

As to paragraph (b) of subdivision 2 of CPL 40.20, there is nothing of substance by way of elements in the town ordinance which distinguishes it from the State law; both are designed to prevent the same kind of harm or evil, viz: despoliation of the environment.

With respect to paragraph (f) of subdivision 2 of CPL 40.20,

it is interesting to note that the commentary of Professor (now Judge) Denzer (Practice Commentaries, McKinney's Cons. Laws of N.Y., Book 11A, CPL 40.20, p 108) "finds apt illustration" in a hypothetical case similar in its facts to those in *Matter of Klein v Murtagh* (44 AD2d 465, affd 34 NY2d 988), a case upon which the Attorney-General relies.

Discussing the hypothetical case, the commentary notes: "On the basis of fraudulent misrepresentations made to various people in New York State, the defendant is prosecuted and tried in a federal court for the federal crime of using the mails to defraud. At the conclusion of the Government's evidence, the case is dismissed by the court on the single and explicit ground that the proof failed to establish the use of any postal facilities in the execution of the fraudulent enterprise. Under these narrow circumstances, the proposed provision permits subsequent prosecution in the New York courts for larceny by false pretenses based upon the same conduct and misrepresentations."

In the hypothetical case and in *Klein (supra),* there were two separate jurisdictions, Federal and State. Here we have only one, i.e., the Town of Shelter Island, for the word "jurisdiction" is defined variously as:

"the authority by which courts and judicial officers take cognizance of and decide cases" and "the legal right by which judges exercise their authority" and further "it exists when court has cognizance of class of cases involved, proper parties are present, and point to be decided is within issues" (see Black's Law Dictionary [rev. 4th ed.] p 991).

The word "jurisdiction" is distinguished from "venue" in the same tome (pp 1727–1728) as follows: " 'Jurisdiction' of the court means the inherent power to decide a case, whereas 'venue' designates the particular county or city in which a court with jurisdiction may hear and determine the case."

At bar, the Justice Court of Shelter Island has jurisdiction of the alleged State violation—as the State concedes—just as it had jurisdiction of the alleged violation of the Wetlånds Ordinance; paragraph (f) of subdivision 2 of CPL 40.20 therefore does not apply.

As to the actual dredging operation, the accusatory instruments filed against Kessler were sworn to, in part, on information and belief. In each case the source was one Louis H. Price, the Town Building Inspector. In his affidavit he averred that Kessler had caused the actual dredging to be performed

on September 10, 1973 and that when he (Price) appeared on the scene on each of the two following days, no further work had been done and there was no equipment on the site. The selfsame affidavit was used for both instruments.

The State contends that since the dredged material was left in the spoil area, it violated former section 25-0501 of the ECL in that "each violation shall be a separate and distinct offense, and, in the case of a continuing violation, each day's continuance thereof shall be deemed a separate and distinct offense." (L 1973, ch 790.) The town's ordinance contains a similar caveat.

The short answer to this claim is that, by virtue of Kessler's acquittal before the Town Justice, there was no offense in the first place. Since there was no criminal violation to begin with, the fact that the dredged material remains in the spoil area—itself a wetland—can scarcely make it one.

The case of *People v Fernandez* (43 AD2d 83) supports the petitioner. A disorderly conduct charge (in violation of section 722 [subd 3] of the former Penal Law) was lodged against Fernandez. It was later disposed of on appeal by a reversal and dismissal. Pending trial of the offense, Fernandez was indicted for resisting arrest and assaulting a policeman. The latter charges arose out of the same altercation which engendered the first complaint. His motion to dismiss the indictment on the ground of former jeopardy was denied. He proceeded to trial, was convicted, and appealed.

On appeal, Mr. Justice HOPKINS of this court observed (pp 89–90):

"The new standard whereby we are to judge the issue of double jeopardy adopts an approach looking not at the components of offenses arising out of the same transaction or the evidence necessary to establish those offenses, but at the nature of the transaction itself. The standard, in the words of Mr. Justice BRENNAN, 'not only enforces the ancient prohibition against vexatious multiple prosecutions embodied in the Double Jeopardy Clause, but responds as well to the increasingly widespread recognition that the consolidation in one lawsuit of all issues arising out of a single transaction or occurrence best promotes justice, economy, and convenience' (*Ashe v. Swenson,* 397 U. S. 436, 454, *supra;* cf. Model Penal Code, American Law Inst., Proposed Official Draft, § 1.09).

"Thus, the statute provides that 'a person may not be separately prosecuted for two offenses based upon the same

act or criminal transaction' (CPL 40.20, subd. 2) and then, as Judge DENZER puts it, 'postulates certain exceptions to that rule' (Practice Commentary on CPL 40.20 in McKinney's Cons. Laws of N.Y. Book 11A, p. 107, *supra*). We find that the exceptions to the general rule are not apposite here. The impetus of the statute, consequently, exempts a person from multiple prosecutions founded on the same transaction, unless an exception plainly renders the general rule inapplicable." (See, also, *United States v Jenkins,* 420 US 358.)

For the reasons advanced herein, I believe that the judgment should be reversed, on the law, and the information dismissed.

RABIN, Acting P. J., and SHAPIRO, J., concur with MARGETT, J.; COHALAN, J., dissents and votes to reverse the judgment and grant the petition, with a dissenting opinion in which BRENNAN, J., concurs.

Judgment of the Supreme Court, Suffolk County, dated September 27, 1974, affirmed, with $50 costs and disbursements.