The People of the State of New York, Respondent, v Paul R. Dean, Appellant.

Fourth Department, February 25, 1977

*Peter L. Yellin (Edward Nowak* and *Andrew Fine* of counsel), for appellant.

*Lawrence T. Kurlander, District Attorney (Michael Nelson* of counsel), for respondent.

MOULE, J. Defendant appeals from a judgment of conviction entered upon a jury verdict which found him guilty under an indictment numbered 534 of three counts of grand larceny in the second degree and three counts of issuing a bad check.[1] He

1. The conviction on the latter three counts was dismissed as being inclusory.

alleges seven points of error including, *inter alia,* that double jeopardy was a bar to the trial in the instant case and that he was denied his right to a speedy trial.

Defendant was president of Paul R. Dean & Company, Inc., a dealer in municipal bonds. In early March, 1973 defendant and his company accepted certain bonds delivered by the City of Rochester on behalf of Insana Construction Company. These bonds had been deposited by Insana with Monroe County pursuant to a contract to improve sewer facilities. Defendant had received the bonds upon completion of the work and was authorized by Insana to sell them and remit the proceeds. This was done and $58,400 plus interest was deposited in defendant company's Chemical Bank account on March 9, 1973. On March 16, 1973 a check was issued to Insana for $60,503.56. The check was received on March 21, 1973 and presented for payment on both March 22, 1973 and March 26, 1973. In each instance the check was returned for insufficient funds.

During this same period of March 16 to 22, 1973 defendant ordered a total of 30,000 shares of Xerox stock through the Lincoln First Bank of Rochester. Overdrawing on the company's already overdrawn checking account with Chemical Bank, defendant authorized the issuance of at least eight checks to Lincoln as payment for the shares of stock. The issuance of these checks on the Chemical Bank checking account increased a prior deficit of $267,000 to $4,459,000. Three checks totaling over $2,500,000 and issued to Lincoln as payment for the second block of 15,000 shares of stock were returned to Lincoln by the Chemical Bank for reason of insufficient funds and are the basis for Indictment No. 534. The record clearly indicates that defendant was not only aware of the fact that he was drawing checks on an overdrawn account but did so without fear of the possible consequences.

Thereafter, on September 21, 1973 a Grand Jury returned six indictments[2] against defendant individually and Paul R. Dean & Company, Inc. We need only concern ourselves with Indictments 534 and 535. In September, 1974 Indictment No. 535 was brought to trial. This indictment arose out of the

---

2. These indictments were numbered 533 to 538. In May, 1974 Indictment No. 533 was brought to trial and defendant was acquitted on all counts charged in that instrument. No claim of double jeopardy has been presented because of this acquittal and indictments numbered 536 to 538 have not yet been disposed of.

issuance of the check by Paul R. Dean & Company, Inc. to Insana Construction Company on March 16, 1973 and charged defendant with grand larceny in the second degree and issuing a bad check. On November 26, 1974 defendant was convicted on the charge of issuing a bad check and acquitted on the grand larceny charge. An appeal was taken and on May 30, 1975 his conviction was affirmed by this court *(People v Dean,* 48 AD2d 233).

On September 21, 1975 defendant moved to dismiss the remaining indictments numbered 534, and 536 to 538 on the ground that he had been denied his right to a speedy trial. On January 14, 1976 his motion was denied and on January 16, 1976 the People proceeded to trial on the charges contained in Indictment No. 534. This indictment charged defendant with three counts of grand larceny in the second degree and three counts of issuing bad checks arising out of defendant's transactions with Lincoln First Bank of Rochester in which he issued checks for the payment of stock which were returned for reason of insufficient funds. The charges contained therein are those upon which defendant was tried in the instant case and upon which a verdict of guilty was returned; defendant does not urge that the verdict was against the weight of the evidence.

Defendant's first contention on this appeal is that double jeopardy was a bar to the trial in the instant case, i. e., that the charges under Indictment No. 534 relating to defendant's transactions with Lincoln First Bank should have been prosecuted in the same proceeding as were the charges under Indictment No. 535 which culminated in defendant's conviction of issuing a bad check.

A defendant's right to protection against double jeopardy in New York is specifically provided for in the State Constitution (NY Const, art I, § 6). However, it has been left to the State Legislature to define precisely this concept and to prescribe the circumstances or kinds of situations to which it applies *(Matter of Klein v Murtagh,* 44 AD2d 465, 469, affd 34 NY2d 988; *People v Fernandez,* 43 AD2d 83, 87). CPL 40.20 and 40.40 represent the Legislature's response to this task.

CPL 40.20 (subd 1) states that "[a] person may not be twice prosecuted for the same offense". This section prescribes the double jeopardy doctrine in its purest and simplest form. Inasmuch as the offenses charged under indictments numbered 534 and 535 are factually distinct and do not constitute

the "same offense", the proscription of this subdivision is not applicable. CPL 40.20 (subd 2) states that "[a] person may not be separately prosecuted for two offenses based upon the same act or criminal transaction".[3] Regardless of whether it is found that the offenses charged under indictments numbered 534 and 535 are based upon the same act or criminal transaction, since the offenses under each indictment involved loss or other consequence to different victims, i.e., Insana Corporation and Lincoln First Bank, there is no bar on the ground of double jeopardy under this subdivision (CPL 40.20, subd 2, par [e]). Therefore, application of CPL 40.20 to the facts here results in no double jeopardy violation.

Nevertheless, it is still necessary to proceed with an application of CPL 40.40 to the facts here. That section places a bar on separate prosecution of jointly prosecutable offenses and deals with prosecutions for different and factually distinct offenses arising out of the same criminal transaction under circumstances wherein no violation of the double jeopardy principle can validly be maintained but the equities nevertheless seem to preclude separate prosecutions *(People v Ruzas,* 54 AD2d 1083 citing Denzer's Commentaries, CPL 40.40, pp 142-144). However, the prohibition against separate prosecution of jointly prosecutable offenses applies *only* if the defendant has requested consolidation thereof for trial purposes and the request is denied (CPL 40.40, subd 3). Here, the defendant did not move for consolidation and thus he is deemed to have waived his right to object to separate prosecutions (see Denzer, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 40.40, p 144).

Although defendant cannot support his contention by utilizing either the New York statutory scheme which codifies the law of double jeopardy (CPL 40.20) or the joinder provisions of CPL 40.40, he still has available a Federal constitutional claim under the Fifth Amendment's protection against double jeopardy which is applicable to State criminal prosecutions through the due process clause of the Fourteenth Amendment *(Benton v Maryland,* 395 US 784, 794).

In providing this Federal constitutional protection, two distinct tests have been utilized by the courts in determining when double jeopardy will apply. One test, the "same evidence" test, requires that before double jeopardy applies, it

---

3. A definition of "Criminal transaction" is found in CPL 40.10 (subd 2).

must be shown that the same evidence necessary to sustain a second indictment would have been sufficient to secure a conviction on the first indictment.[4] *(Ashe v Swenson,* 397 US 436, BRENNAN, J., concurring, at p 451; see, also, *Blockburger v United States,* 284 US 299, 304.) The second test is the "same transaction" test which requires the prosecution to join at one trial "all the charges against a defendant which grow out of a single criminal act, occurrence, episode, or transaction" *(Ashe v Swenson,* 397 US 436, BRENNAN, J., concurring, *supra,* pp 453-454). There exists no authority for the fact that either of these two Federal tests is required to be applied in a given instance nor is there any authority for the fact that either test is constitutionally preferred.

The New York statutory standard, as set forth in CPL 40.20, has not been found unconstitutional nor is it being challenged as so here. It is a standard which is more protective of defendant's rights than the Federal "same evidence" test, yet is not as broad as the Federal "same transaction" test. Inasmuch as there is no mandate from the Supreme Court to adopt a particular test to apply in this situation, we see no reason to abandon the New York statutory standard and adopt a different one. As was shown above, application of the relevant sections of the CPL to the facts here leads to the result that the prosecution of Indictment No. 534 was not barred by double jeopardy and therefore any such claim by defendant, whether constitutional or statutory, must be dismissed as being without merit.

As his second contention defendant asserts that collateral estoppel was a bar to his prosecution under Indictment No. 534 for the crime of grand larceny in the second degree arising out of the issuance of three checks to Lincoln First Bank for the purchase of stock during the period of March 16-23, 1973.

Since the Supreme Court's decision in *Ashe v Swenson* (397 US 436, *supra),* collateral estoppel has been a doctrine of constitutional consequence. *Ashe* established that collateral estoppel is a component of the Fifth Amendment's guarantee against double jeopardy and it is thus made applicable to the

---

4. Clearly, under the same evidence test, double jeopardy would not be a bar in this case since the evidence with respect to the charges under Indictment No. 534 relating to defendant's transactions with Lincoln First Bank would not have been sufficient to sustain a conviction on Indictment No. 535 relating to defendant's transactions with Insana Company.

States through the due process clause of the Fourteenth Amendment *(Benton v Maryland,* 395 US 784, *supra).* Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit" *(Ashe v Swenson,* 397 US 436, 443, *supra;* see, also, *Matter of McGrath v Gold,* 36 NY2d 406, 411).

In September, 1974 defendant stood trial on the charges contained in Indictment No. 535 arising out of the issuance of a check to Insana Company in the amount of $60,503.56 on March 16, 1973. The jury returned a verdict of guilty on the charge of issuing a bad check and acquitted the defendant on the grand larceny charge.[5] Defendant claims that the single rationally conceivable explanation for his acquittal on the larceny charge was that the jury determined that he acted without larcenous intent with respect to not only his transactions with Insana Company but also with respect to all transactions which occurred during the period of March 16-23, 1973, including those which form the basis of Indictment No. 534. Defendant therefore submits that he should not have been subjected to trial under Indictment No. 534 for the charges of grand larceny in the second degree in that the issue of "intent" had been determined in his favor in the prior trial on Indictment No. 535.

Examining the jury's verdict of acquittal with respect to the larceny charge under Indictment No. 535, it cannot be said that the jury could only have grounded its verdict upon a conclusion that defendant acted without larcenous intent in all of his business transactions for the period of March 16-23, 1973, and particularly those involving Lincoln First Bank. It is certainly plausible that the jury based its acquittal upon the belief that no property had been obtained or withheld by means of the bad check issued to Insana or that defendant had no specific knowledge of the deposit of the Insana bond proceeds in the company account and thus no intention of stealing them. Since it cannot be determined with any degree of certainty that the earlier acquittal under Indictment No. 535 necessarily represented a finding by that jury that defendant lacked larcenous intent with respect to his transactions with Lincoln First Bank, collateral estoppel should not be

---

5. Defendant was charged under both Indictments Nos. 534 and 535 with having committed grand larceny by committing the crime of issuing a bad check (see Penal Law, §§ 155.35; 155.05, subd 1, subd 2, par [c]; § 190.05).

recognized as a bar to the present prosecution (see *Sealfon v United States,* 332 US 575; *United States v Cala,* 521 F2d 605, 607-608; *United States v Kenny,* 236 F2d 128, 130-131, cert den 352 US 894).

Defendant's third contention on this appeal is that the trial court erred in summarily denying his pretrial motion pursuant to CPL 210.20 (subd 1, par [g]) to dismiss Indictment No. 534 on the ground that he was denied his right to a speedy trial.

With respect to the issue of whether a hearing was required under the circumstances, CPL 210.45 (subd 5) provides:

"The court may deny the motion without conducting a hearing if:

"(a) The moving papers do not allege any ground constituting legal basis for the motion pursuant to subdivision one of section 210.20; or

"(b) The motion is based upon the existence or occurrence of facts, and the moving papers do not contain sworn allegations supporting all the essential facts; or

"(c) An allegation of fact essential to support the motion is conclusively refuted by unquestionable documentary proof."

Here, defendant's affidavit merely contains conclusory allegations with respect to his reasons for the granting of his motion to dismiss the indictment on speedy trial grounds. He asserts that extreme prejudice has resulted to him due to the delay in bringing the indictment to trial and that both he and his witnesses have undoubtedly had their recollection marred by the passage of time. However, he fails to set forth in detail in what manner he has been prejudiced and in what respect he or his witnesses were suffering from a loss of memory and recollection *(People v London,* 36 AD2d 980). Additionally, defendant's counsel submitted an affidavit in support of the motion in which he states that there has been no delay due to the actions of defendant or himself. The record contains a list of dates beginning in September, 1973 and continuing through January, 1976 on which various motions and adjournments took place. Although defendant's attorney alleges that no delay was caused by defendant, he does not mention any of these motions or adjournments nor does he assert that defendant or he himself was not responsible for them.

Inasmuch as the affidavits of both defendant and his attorney fail to contain sufficient facts to support the allegations

contained therein, the trial court acted properly in not requiring a hearing on the matter.

Although the trial court did not have to make a determination on the merits, we fully agree with its decision that there was no violation of defendant's constitutional or statutory right to a speedy trial.

A defendant's right to a speedy trial is guaranteed both by the United States Constitution (Sixth and Fourteenth Amendments) and by CPL 30.20 (subd 1) which states that "[a]fter a criminal action is commenced, the defendant is entitled to a speedy trial". In addition to CPL 30.20, the Legislature has enacted CPL 30.30, which sets forth certain time limitations within which the People are required to be ready for trial (CPL 30.30, subd 1, par [a]). In interpreting section 30.20, the Court of Appeals has held that there is no specific temporal duration after which a defendant automatically becomes entitled to release for denial of a speedy trial, but rather the court must examine the claim in light of particular factors (*People v Taranovich*, 37 NY2d 442; *People v White*, 32 NY2d 393; see, also, *People v Rarback*, 40 NY2d 922). These factors include the extent of the delay, the reason for the delay, the nature of the underlying charge, whether or not there has been an extended period of pretrial incarceration and whether or not the defense has been impaired by reason of the delay (*People v Taranovich*, 37 NY2d 442, 444, *supra*).

In asserting that there was no violation of defendant's right to a speedy trial the trial court stated the following: "This court is influenced by the fact that court congestion is a definite reason for this delay, the fact that the People have at all times been ready for trial, the fact that the defendant has already been tried twice, the fact that the defendant has not been incarcerated, and the fact that the defendant has sustained no prejudice as a result of the delay." These factors constitute sufficient grounds for denial of the motion (*People v Taranovich*, 37 NY2d 442, 444-445, *supra*; see, also, *People v Johnson*, 38 NY2d 271, 276; *People v Staley*, 52 AD2d 1056, 1057) and we see no reason for disturbing the trial court's determination.

Additionally, we find no violation of defendant's right to a speedy trial under CPL 30.30, in that application of that section to the facts here shows that after exclusion of the time not charged to the prosecution under CPL 30.30 (subd 4, par

[a]) the State was ready for trial within the required six-month period.[6]

Under his fourth contention defendant urges reversal based upon certain portions of the prosecutor's summation which defendant asserts were improper, inflammatory and highly prejudicial. Defendant's counsel did not object to most of the prosecutor's remarks that are being challeged on this appeal but argues that this court should grant him a new trial in the interest of justice (CPL 470.15; see *People v Ashwal,* 39 NY2d 105).

We have examined the entire summation and find that the prosecutor's comments were well within the wide latitude accorded him *(People v Adams,* 21 NY2d 397; *People v Lombardi,* 20 NY2d 266). The prosecutor did not refer to matters not in evidence nor did he call upon the jury to draw conclusions which were not fairly inferable from the evidence *(People v Ashwal,* 39 NY2d 105, 109-110, *supra).* Additionally, he did not make himself an unsworn witness or interject his veracity and reputation in support of his case (see *People v Lovello,* 1 NY2d 436, 439; *People v Anderson,* 46 AD2d 150). We therefore find that defendant's contention cannot be sustained.

Defendant's fifth contention is that the parol evidence rule should have precluded the prosecution from exploring the meaning and nature of an "Assignment and Security Agreement" entered into between defendant, defendant's company and the Lincoln First Bank of Rochester, Inc. on March 29, 1973.

The general rule in New York is that the parol evidence rule is applicable only to actions of a contractual nature (22 NY Jur, Evidence, § 604). The courts have recognized that the parol evidence rule has no application in a criminal prosecution *(People v Walker,* 85 App Div 556, affd 178 NY 563;

6. Indictments numbered 533-538 were returned against defendant on September 21, 1973. Between September 21, 1973 and November 26, 1974 defendant stood trial twice, on Indictments No. 533 and No. 535. In May, 1974 defendant was acquitted on the charges under Indictment No. 533. On November 26, 1974 defendant was convicted on a charge of issuing a bad check under Indictment No. 535. An appeal of this conviction was instituted and the conviction was subsequently affirmed on May 30, 1975. On September 21, 1975, some four months later, defendant moved to dismiss the remaining indictments numbered 534, 536-538 on the ground that he was denied his right to a speedy trial. The motion was summarily denied on January 14, 1976 and the trial in the instant case on the charges contained in Indictment No. 534 commenced on January 16, 1976.

*People v Glickman,* 194 App Div 103; see, also, *People v Scala,* 113 NYS2d 902). Additionally, the parol evidence rule is binding only between those persons who are parties to the contract and their privies and does not apply in a criminal prosecution where the controversy is between the government and a party to the contract *(Mesch v United States,* 407 F2d 1286, cert den *sub nom Baldwin v United States,* 395 US 979; *Shale v United States,* 388 F2d 616, cert den 393 US 984). Inasmuch as the State was not a party to the assignment and security agreement executed between defendant and Lincoln First Bank, the prosecution was properly permitted to prove the true nature of the agreement by resort to extrinsic evidence. It is also important to note that the testimony offered by the prosecution related solely to the nature of the agreement and its legal significance in relation to the facts presented and did not seek to vary or contradict the written agreement.

Defendant further argues that the assignment and security agreement constituted a complete defense to Indictment No. 534 and that the trial court erred in failing to dismiss the indictment at the close of defendant's case.

Defendant was prosecuted in the instant case for the crime of grand larceny "by committing the crime of issuing a bad check" (Penal Law, § 155.05, subd 2, par [c]). It is an affirmative defense to the crime of issuing a bad check that "[T]he defendant or a person acting in his behalf made full satisfaction of the amount of the check within ten days after dishonor by the drawee" (Penal Law, § 190.15, subd 1). Defendant argues that the effect of the assignment and security agreement which was signed within 10 days of dishonor of the three checks issued to Lincoln is to fully secure his indebtedness to Lincoln and that as such it constitutes an affirmative defense to the grand larceny charges as a matter of law. The assignment and security agreement was a conveyance by defendant to Lincoln of whatever interest, if any, he had in the Xerox stock held by Chemical Bank of New York and Bear, Stearns & Company. The instrument states that Lincoln secures defendant for repayment of all indebtedness arising from the dishonor of checks. However, it does not state that it is a novation or that it is a complete accord and satisfaction. It clearly cannot be said as a matter of law that the instrument is an acceptance of the collateral by Lincoln as a substitute for the money owed by defendant. Nowhere does

the agreement state that the bank accepts the collateral in full satisfaction of the amount of the dishonored checks. Defendant's affirmative defense based upon the agreement was properly submitted to the jury for their consideration.

As his sixth contention defendant urges that his motion for a mistrial should have been granted following the prosecutor's statement to a prospective juror during *voir dire* that he would probably know much more about stocks and stock manipulation after the trial was concluded. The court sustained defendant's counsel's objection to the statement and twice admonished the jury to disregard it. The court's action in this instance reduced whatever prejudicial impact was created and we do not feel that the denial of the motion for a mistrial so clearly deprived defendant of a fair trial as to constitute reversible error.

We have examined defendant's final contention concerning errors relating to the court's charge to the jury and find it to be without merit. A reading of the entire charge indicates that any error the court might have committed in its original definition of reasonable doubt was more than adequately corrected by its subsequent instructions on this issue.

With respect to defendant's requests to charge the jury as to the definition of various terms in the assignment and security agreement entered into between defendant and Lincoln Bank, we find the denial of these requests to be in all respects proper. The terms which defendant sought to have defined were neither complex nor highly technical and were, in fact, explained to the jury at least to some degree by an attorney who testified on defendant's behalf. Nor do we find that the court erred in setting forth for the jury a hypothetical example dealing with the relationship between grand larceny in the second degree and issuing a bad check. Although admittedly the example used by the court was simplified to a great degree and did not specifically deal with the question of criminal intent, any misconception that the jury might have derived from this example was sufficiently corrected by the court's lengthy and detailed instructions regarding the elements of each offense as well as the emphasis placed by the court upon the requirement of criminal intent. Finally, we dismiss as meritless defendant's claim that the court, in granting certain of defendant's requests to charge, did not instruct the jury in the precise language contained in the request (see *United States v Rheams,* 257 F2d 842).

The judgment of conviction should be affirmed.

MARSH, P. J., CARDAMONE, SIMONS and DILLON, JJ., concur.

Judgment unanimously affirmed.