James A. **RUSSELL**, Plaintiff–Appellant,

v.

James **SMITH** and City of New York, Defendants–Appellees.

No. 977, Docket 94–2425.

United States Court of Appeals, Second Circuit.

Argued March 3, 1995.

Decided Oct. 11, 1995.

Timothy M. Hughes, New York City (Charles K. O'Neill, Brian A. Miller, Chadbourne & Parke, Of Counsel), for Plaintiff–Appellant.

Ellen B. Fishman, New York City (Paul A. Crotty, Corporation Counsel of the City of New York and Leonard Koerner, Of Counsel), for Defendants–Appellees.

Before: WINTER and LEVAL, Circuit Judges, and SAND, District Judge.[*]

LEVAL, Circuit Judge:

This is an action for malicious prosecution pursuant to 42 U.S.C. § 1983. Plaintiff James Russell appeals from an order of the United States District Court for the Southern District of New York (Tenney, *J.*), granting summary judgment to the defendants James Smith and the City of New York on the ground that plaintiff had failed to show that the prosecution against him had been terminated in his favor. We affirm.

## I. *Background*

On the night of January 9, 1981, four men were murdered during an apparent robbery at a basement social club at 1272 Clay Avenue in the Bronx. The social club was a reputed drug den. The victims had been shot in the head and buttocks with a .357 magnum and a .22 caliber pistol.

The defendant Smith was one of three police detectives assigned to the case. During the course of the investigation, the police uncovered evidence implicating plaintiff Russell in the homicides. Police investigators questioned John Viust, who said that he had overheard Russell and others (including Viust's brother) plan the robbery, and was

[*] The Honorable Leonard B. Sand, United States District Judge for the Southern District of New York, sitting by designation.

present when Russell and the others returned to divide the loot. Viust said that the perpetrators brought back a white gold ring with an initial and a chip diamond in it; this matched the description of a ring owned by one of the victims. Betty Castaing, Viust's girlfriend, also told police that she was with Viust and saw Russell and three other men on the night of the murders with drugs, money, guns, and jewelry. Furthermore, when Russell was arrested two months later, in March 1981, for the attempted robbery of a different social club, the police found a .357 magnum at the scene, which ballistics tests showed was the gun used to kill two of the victims in the Clay Avenue homicides.

Based on this evidence, the Bronx district attorney sought indictments against Russell and three other men for the Clay Avenue murders. Before the grand jury, John Viust testified that on the night of the murders he observed Russell, Viust's brother, and two others plan the Clay Avenue robbery, leave with several guns, and later return with guns, jewelry, money, and cocaine. Viust also testified that his brother later told him that the robbers had killed four people during the robbery. The grand jury returned indictments against Russell, Viust's brother, and the two other men. Castaing also testified before the grand jury; her testimony substantially corroborated Viust's.

Prior to trial, Viust repudiated his earlier testimony. In an affidavit dated March 21, 1983, Viust stated that Detective Smith had coerced him into implicating the four accused defendants and that his grand jury testimony had been false. On April 6, 1983, on Russell's motion, the state trial court dismissed the indictment against Russell "with leave to represent." The dismissal was recorded under the heading "Disposition other than Conviction or Acquittal." Since the dismissal, Russell has not been reindicted.

In 1984, Russell commenced this action against Smith, the City of New York, and others,[1] seeking civil damages for malicious prosecution under § 1983. During discovery, Viust refused to answer questions relating to

his grand jury testimony. After discovery was completed, the defendants moved for summary judgment, arguing, among other things, that Russell had not shown that the prior criminal proceeding had been terminated in his favor. Russell, being unable to offer any testimony by Viust in support of his contentions, submitted a copy of Viust's 1983 affidavit in which he had recanted his grand jury testimony. Smith, by affidavit, denied Viust's accusation. He asserted that he had never threatened or coerced Viust, that he had no role in preparing Viust for his grand jury testimony, and that Viust's grand jury testimony was consistent with statements Viust had previously given to Smith and other police officers and was corroborated by other evidence. The district court granted the defendants' motion for summary judgment on the sole ground that Russell had failed to show that the proceedings had been terminated in his favor.

Russell advances two grounds for finding error in the district court's decision. First, Russell contends that summary judgment was inappropriate because there was a factual dispute over whether Smith coerced Viust into falsely testifying against Russell. Second, Russell argues that there was ample evidence in the record to support a jury finding that the charges were terminated in Russell's favor. He contends that this is shown by Viust's statement recanting his grand jury testimony, by the dismissal of the charges, and by the fact that he has not been reindicted.

## II. *Discussion*

■ We review *de novo* the district court's decision to grant summary judgment. *Vezzetti v. Pellegrini*, 22 F.3d 483, 485 (2d Cir. 1994). Summary judgment is appropriate where there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c).

---

1. The claims against defendants other than Smith and the City of New York were dismissed

in prior orders not under appeal.

■ As the district court recognized, a claim of malicious prosecution brought under § 1983 is governed by state law. *See Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir.1989). Under New York law, a plaintiff suing for malicious prosecution must establish: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions. *See Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991). Termination of the criminal charges in plaintiff's favor is an essential element of the claim. *See Hollender v. Trump Village Cooperative, Inc.,* 58 N.Y.2d 420, 448 N.E.2d 432, 435, 461 N.Y.S.2d 765, 768 (1983); *Munoz v. City of New York,* 18 N.Y.2d 6, 218 N.E.2d 527, 529, 271 N.Y.S.2d 645, 649 (1966); *Loeb v. Teitelbaum,* 77 A.D.2d 92, 98, 432 N.Y.S.2d 487, 492 (1980), *amended,* 80 A.D.2d 838, 439 N.Y.S.2d 300 (1981).

■ An acquittal is the most obvious example of a favorable termination. In many instances, however, criminal proceedings are terminated in a manner that does not establish either guilt or innocence. In the absence of a decision on the merits, the plaintiff must show that the final disposition is indicative of innocence. *See Singleton v. City of New York,* 632 F.2d 185, 193 (2d Cir.1980) (final disposition must indicate that the accused is not guilty), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Hollender,* 448 N.E.2d at 435 (favorable termination requires showing that final disposition indicates innocence); Restatement (Second) of Torts § 660, comment a (1977) (same).

■ Thus, the first question is whether the dismissal of Russell's indictment was a final disposition indicating Russell's innocence. We find that it was neither a final disposition, nor an indication of innocence. Because the New York trial court granted the prosecution leave to re-present when it dismissed the indictment, the state may yet reinstate the charges against Russell. *See* N.Y.Crim.Proc.Law § 210.20(4). Russell was charged with four counts of second degree murder, a class A felony, and there is no time limit for prosecuting a class A felony.

*See* N.Y.Penal Law § 125.25 (defining second degree murder as a class A felony); N.Y.Crim.Proc.Law § 30.10(2)(a) (prosecution for class A felony may be commenced at any time). Nor does the New York statute authorizing dismissal with leave to re-present prescribe a time limit to reindict following dismissal. N.Y.Crim.Proc.Law § 210.20(4); *People v. Merhige,* 40 A.D.2d 223, 338 N.Y.S.2d 1009, 1010–11 (1972) (court may not impose time limit for reindictment). As reinstitution of Russell's prosecution was expressly provided by the court, the termination was neither final, nor indicative of innocence. *See Heaney v. Purdy,* 29 N.Y.2d 157, 272 N.E.2d 550, 553, 324 N.Y.S.2d 47, 50 (1971) ("[I]f the termination still permitted or envisaged a renewed prosecution there was no termination in plaintiff's favor.").

■ Even if, in unusual circumstances, New York may regard a termination as indicative of innocence notwithstanding a grant of leave to re-present, no such circumstances are presented here. Courts characteristically treat witness recantations "with the utmost suspicion." *See United States v. DiPaolo,* 835 F.2d 46, 49 (2d Cir.1987) (denying motion for new trial despite submission of recanting affidavit signed by witness) (internal quotation marks and citations omitted). Here, such suspicion is particularly well justified. Viust's recantation is more suspect than most because the testimony he recanted implicated his own brother. Viust's grand jury testimony was consistent with statements he had previously given to Smith and other police detectives investigating the Clay Avenue murders. It was, furthermore, substantially corroborated by Castaing, by the subsequent discovery of the murder weapon at the scene of another similar robbery where Russell and another of the Clay Avenue murder defendants had been placed, as well as by other circumstances. Viust, furthermore, refused to testify in support of Russell in this proceeding. Russell has failed to show that the dismissal of the charges against him conveyed any indication whatever of innocence.

In support of his claim that the prior proceeding was favorably terminated, Russell cites *Loeb v. Teitelbaum,* 77 A.D.2d 92, 100–

01, 432 N.Y.S.2d 487, 493–94 (1980), and *Reit v. Meyer,* 160 A.D. 752, 146 N.Y.S. 75, 78–79 (1914), both of which held that a dismissal based on abandonment of prosecution is considered a favorable termination under New York law. However, these authorities do not help his case. The dismissal here was not based on abandonment.

■ Russell argues that even if the dismissal was not a favorable termination, the government has subsequently abandoned the prosecution, and that abandonment constitutes a favorable termination. Assuming that a post-dismissal abandonment can qualify as a termination favorable to the accused, under the circumstances present here, the mere fact that Russell has not yet been reindicted is insufficient to raise an inference of abandonment. The record is silent as to whether the prosecution has made efforts to pursue the matter with a grand jury. Russell was charged with an extremely serious crime—quadruple homicide in furtherance of an armed robbery. As noted above, there is no limitations period applicable to such a crime. In the absence of other sources of evidence, prosecution was temporarily blocked by Viust's recantation. But there has never been an indication that the prosecution, or the court, considers Russell to have been wrongly charged and to be innocent of the murders. The possibility remains open that either Viust or another person may get into trouble and offer testimony about the murder as part of a plea bargain. Russell may then be reindicted. In these circumstances, the delay carries no suggestion of abandonment. Russell has failed to raise a triable issue of fact supporting his contention.

Russell contends that there are disputed issues of fact which preclude a grant of summary judgment. He is mistaken. The district court was not required to resolve whether Russell was in fact guilty or innocent, or whether Viust's falsehood lay in his initial implication of Russell or in his subsequent recantation. Rather, the issue is whether the dismissal of the charges against Russell was indicative of innocence. As a matter of law, it was not. The dismissal indicated nothing as to Russell's guilt or innocence.

In support of his argument that the dispute over the facts surrounding Viust's recantment creates a factual issue precluding summary judgment, Russell cites *Allen v. Town of Colonie,* 182 A.D.2d 998, 583 N.Y.S.2d 24 (1992), and *Rounseville v. Zahl,* 13 F.3d 625 (2d Cir.1994). In *Rounseville,* we cited *Allen* for the proposition that "when the grounds for the dismissal of a criminal proceeding are unclear, New York courts consider whether the proceeding was terminated in plaintiff's favor to be a question of fact that prevents summary judgment." *Rounseville,* 13 F.3d at 629.

Those cases do not address the circumstances present here. The rule followed in *Rounseville* and *Allen* bars summary judgment when the parties disagree as to the ultimate disposition of the prior criminal proceedings. In *Allen,* there was no certified record establishing the grounds for dismissal. The defendants, relying on a statement appearing in the plaintiff's affidavit, claimed that the dismissal was in the interest of justice, which is not a favorable termination under New York law. The court, finding that a lay person's affidavit was an insufficient basis for establishing the grounds for dismissal, ruled that there was a question of fact as to whether the proceedings had been terminated in plaintiff's favor. *Allen,* 583 N.Y.S.2d at 26. Similarly, in *Rounseville,* factual disputes regarding the ultimate disposition of the case precluded summary judgment. The plaintiff claimed that the dismissal was based on the district attorney's abandonment of the prosecution; the defendants claimed that suit was dismissed in the interest of justice. Because the very nature of the final disposition was in dispute, summary judgment was inappropriate. *Rounseville,* 13 F.3d at 629.

Here, regardless what other disputed issues there may be, there is no dispute over the legal effect of the disposition of the case. The dismissal permitted future prosecution, and Russell has shown no facts that could support a claim either that the dismissal was indicative of innocence, or that prosecution was subsequently abandoned. Were we to rule otherwise and permit this action to proceed, Russell might well win an award of

38

damages for malicious prosecution and later be convicted of the very crime for which he was found to be wrongly accused.

### Conclusion

Plaintiff failed to show a triable issue of fact as to whether he received a final termination indicating his innocence. The trial court correctly granted summary judgment in favor of the defendants. Affirmed.