Mario DiBLASIO, Plaintiff–Appellant,

v.

The CITY OF NEW YORK; J. James Owens, New York City Police Officer, Shield 510, formerly No. 22825; Phillip Giardina, Shield No. 200; Unknown New York City Undercover Police Officer "Joey Doe", Shield No. 1369, Defendants–Appellees.

No. 364, Docket 96–7282.

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 1996.

Decided Dec. 13, 1996.

See also 932 F.2d 1038.

Susan D. Fitzpatrick, Ossining, NY, for Plaintiff–Appellant.

Jane L. Gordon, Assistant Corporation Counsel, New York City (Paul A. Crotty, Corporation Counsel of the City of New York, Larry A. Sonnenshein, Assistant Corporation Counsel, New York City, of counsel), for Defendants–Appellees.

Before: VAN GRAAFEILAND, WINTER and JACOBS, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Mario DiBlasio appeals from a judgment of the United States District Court for the Southern District of New York (Martin, J.) dismissing his complaint on the pleadings pursuant to Fed.R.Civ.P. 12(b)(6) and (c).

On August 19, 1985, a Kings County Grand Jury indicted DiBlasio on charges of criminal sale of a controlled substance (cocaine) in the first, second and third degrees and criminal possession of a controlled substance in the fourth degree. The sales were made to undercover police officers, and DiBlasio asserted the defense of entrapment. In 1986, following a jury trial in Supreme Court Kings County, DiBlasio was convicted on all counts.

In 1990, following an unsuccessful appeal in the State courts, *People v. DiBlasio,* 150 A.D.2d 482, 540 N.Y.S.2d 747, *leave to appeal denied,* 74 N.Y.2d 808, 546 N.Y.S.2d 566, 545 N.E.2d 880 (1989), DiBlasio secured a writ of habeas corpus from the United States District Court for the Eastern District of New York based on his claim that the prosecution's failure to produce or identify a confidential informant deprived him of a fair trial. This Court affirmed. *DiBlasio v. Keane,* 932 F.2d 1038 (2d Cir.1991). DiBlasio was retried and was convicted only on the charge of unlawful possession.

DiBlasio brought this suit under 42 U.S.C. § 1983 on January 23, 1993, alleging malicious prosecution by the police officers. He also alleged that the City violated his constitutional rights by failing to train officers not to entrap citizens and by failing to train prosecutors to produce confidential infor-

mants at trial. The district court dismissed the complaint as time-barred and for failure to state a claim. We affirm on the ground that the complaint fails to state a claim.

DiBlasio was a doctor who became addicted to cocaine. In 1984 his drug habit brought him into contact with a drug dealer named Scotty. In March 1985 Scotty asked DiBlasio to help supply cocaine to some customers, who unbeknownst to DiBlasio were undercover police officers. DiBlasio at first refused, but was swayed when Scotty told him that Scotty's life was in danger. DiBlasio purchased six ounces of cocaine from his own supplier, which he and Scotty mixed with lactose to form twelve ounces, and waited for Scotty to set up a meeting.

On July 5, 1985, DiBlasio met with Scotty and Officer Giardina at Scotty's home. DiBlasio sold Giardina four ounces of cocaine for $6,500 and informed Giardina that he could provide a steady supply with "no problem." On July 11th Giardina purchased an additional eight ounces of cocaine for $13,000. Scotty was present at the second sale, but a few days later he told DiBlasio that they would have to disappear because they could not supply the quantities of cocaine that Scotty's customers demanded. Shortly after this conversation Scotty ceased his participation and had no further contact with DiBlasio.

DiBlasio, however, continued to deal with Giardina. On July 17th Giardina and defendant Owens called DiBlasio to complain about the quality of the cocaine Giardina had purchased. The following day Owens and a third officer, "Joey Doe," went to DiBlasio's home and tested a sample of DiBlasio's cocaine. Before the officers left, DiBlasio assured them that he could continue to supply their cocaine needs.

On July 26th, after there was at least one more telephone call from the undercover officers and one abandoned buy attempt, "Joey" and Owens returned to DiBlasio's home to purchase a pound of cocaine. They found the home filled with boxes, and DiBlasio explained that he was moving away. After purchasing an ounce of cocaine, the officers arrested DiBlasio.

Before his trial began in October 1986 DiBlasio moved the court to direct the State to produce Scotty or disclose his whereabouts on the ground that his testimony was needed to bolster DiBlasio's entrapment defense. The motion was denied. DiBlasio testified in his own defense. Although he admitted that he was an addict and that he had sold cocaine to the undercover officers, he asserted that this was the first time he had sold drugs and that he did so only because he thought Scotty's life was in danger and, later, because he feared for his own life.

On the retrial that followed the grant of the habeas corpus writ, Scotty was produced and testified he had agreed to become a paid informant in February 1985 after he was arrested by Owens on a narcotics offense. Scotty also said that his offering of DiBlasio to the police was motivated by revenge because DiBlasio wasn't "taking care" of him. The three police officers also testified. In addition to detailing the sales that took place, each officer said that he had limited training or experience in undercover police investigations. DiBlasio maintained, as he had before, that he was entrapped by the officers. On January 30, 1992, DiBlasio was convicted of unlawful possession and the instant suit followed.

The district court granted defendants' motion for judgment on the pleadings. It found that the alleged unconstitutional conduct—the failure to produce the informant—occurred during the first trial, and plaintiff's failure to bring his § 1983 action within three years of the setting aside of the conviction on that basis barred his claims. The district court also held that the complaint failed to state a claim because plaintiff admitted the sale of cocaine, thus establishing both probable cause for the prosecution and an absence of malice.

■ We reject at the outset DiBlasio's claim against the City based on alleged improper training. Entrapment, as alleged herein, is not a constitutional offense. *See Hampton v. United States,* 425 U.S. 484, 488–91, 96 S.Ct. 1646, 1649–51, 48 L.Ed.2d 113 (1976) (plurality); *United States v. Russell,* 411 U.S. 423, 433, 93 S.Ct. 1637, 1643–44, 36 L.Ed.2d 366 (1973). "While entrapment

may be a proper defense in a criminal action, a police officer's participation in such activity does not constitute a constitutional violation." *Jones v. Bombeck,* 375 F.2d 737, 738 (3d Cir.1967) (per curiam). Under the circumstances, there can be no liability on the part of the City of New York. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986) (per curiam). Moreover, DiBlasio, an admitted drug addict and purchaser of cocaine, was convicted only of its possession, a state of affairs that can be attributed only in part to police entrapment.

We likewise find no merit in DiBlasio's amorphous claim concerning the City's alleged failure to train Kings County prosecutors to produce confidential informants as witnesses, a claim that receives its sole support in the State's failure to produce Scotty on the first trial, a refusal that was supported by the trial judge. There is no fixed rule concerning the disclosure or production of confidential informants. *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 628–29, 1 L.Ed.2d 639 (1957). As we stated on the prior appeal in this matter, disclosure is required when it is material to the defense. However, as we also noted, the determination of materiality lies with the trial judge subject to an abuse of discretion standard of review. 932 F.2d at 1041–42. "[T]his Court has on numerous occasions upheld district courts' refusals to compel identification of informers." *United States v. Van Orsdell,* 521 F.2d 1323, 1325 (2d Cir.1975), *cert. denied,* 423 U.S. 1059, 96 S.Ct. 796, 46 L.Ed.2d 650 (1976). The City can not be held liable for leaving the matter in the hands of the trial judge.

We turn then to DiBlasio's claim of malicious prosecution against the police officers which we will adjudge in accordance with the four elements of a common law tort for malicious prosecution: (1) commencement or continuance of a criminal proceeding, (2) lack of probable cause, (3) existence of malice, and (4) termination in plaintiff's favor. *See Heck v. Humphrey,* 512 U.S. 477, ——, 114 S.Ct. 2364, 2367, 129 L.Ed.2d 383 (1994); *Memphis Community Sch. Dist. v. Stachura,* 477 U.S. 299, 305–06, 106 S.Ct. 2537, 2541–43,

91 L.Ed.2d 249 (1986); *Singer v. Fulton County Sheriff,* 63 F.3d 110, 116–17 (2d Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996); *Singleton v. City of New York,* 632 F.2d 185, 195 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). The merits of DiBlasio's claim of lack of probable cause and malice are questionable because of his indictment by a grand jury. *See Colon v. City of New York,* 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983). However, as will hereafter appear, the absence of a final determination in DiBlasio's favor is the fatal flaw in his claim of malicious prosecution.

In *Burt v. Smith,* 181 N.Y. 1, 5, 73 N.E. 495 (1905), *appeal dismissed,* 203 U.S. 129, 27 S.Ct. 37, 51 L.Ed. 121 (1906), the New York Court of Appeals succinctly defined a common law malicious prosecution action as follows:

> A malicious prosecution is one that is begun in malice, without probable cause to believe it can succeed, and *which finally ends in failure.* (Emphasis supplied).

Over the years New York's highest court has continued the use of this definition. *See Curiano v. Suozzi,* 63 N.Y.2d 113, 118, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984); *Heaney v. Purdy,* 29 N.Y.2d 157, 159, 324 N.Y.S.2d 47, 272 N.E.2d 550 (1971); *Munoz v. City of New York,* 18 N.Y.2d 6, 9, 271 N.Y.S.2d 645, 218 N.E.2d 527 (1966); *Zebrowski v. Bobinski,* 278 N.Y. 332, 333, 16 N.E.2d 355 (1938).

In other decisions the Court of Appeals has used the similar language of section 658 of the *Restatement (Second) of Torts,* which provides:

> To subject a person to liability for malicious prosecution, the criminal proceedings must have terminated in favor of the accused.

*See, e.g., Hollender v. Trump Village Cooperative, Inc.,* 58 N.Y.2d 420, 425–26, 461 N.Y.S.2d 765, 448 N.E.2d 432 (1983); *Martin v. City of Albany,* 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 364 N.E.2d 1304 (1977); *Broughton v. State of New York,* 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 335 N.E.2d 310,

*cert. denied,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975).

In *Singleton v. City of New York, supra,* 632 F.2d at 193, we expressed the same concept as follows:

> Proceedings are "terminated in favor of the accused" only when their final disposition is such as to indicate the accused is not guilty.

■ The Supreme Court in *Heck v. Humphrey* appears to have adopted the rule enunciated in the above-cited New York cases:

> One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.

512 U.S. at ——, 114 S.Ct. at 2371.

Moreover, the reason for the rule as expressed in *Humphrey*—the avoidance of possible conflicting determinations arising out of the same transaction—is substantially the same as was raised by the New York Court of Appeals over a century ago in *Robbins v. Robbins,* 133 N.Y. 597, 599, 30 N.E. 977 (1892) (mem.), and reiterated by that court in *Hauser v. Bartow,* 273 N.Y. 370, 375, 7 N.E.2d 268 (1937).

It is not surprising, therefore, that several United States Courts of Appeals have cited *Humphrey* as authority for the proposition that § 1983 claims for malicious prosecution do not accrue until their respective criminal prosecutions end in acquittal. *See Calero-Colon v. Betancourt–Lebron,* 68 F.3d 1, 4 (1st Cir.1995); *Curtis v. Bembenek,* 48 F.3d 281, 286 (7th Cir.1995).

Had the *Humphrey* Court adhered to the rule of final determination expressed in the above quotation, the appeal before us could have been disposed of quite easily. However, Justice Scalia who wrote *Humphrey* went on to state that, if the criminal trial resulted in a conviction, the cause of action of the malicious prosecution plaintiff would not accrue until "the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." 512 U.S. at ——, 114 S.Ct. at 2373. If interpreted literally, this sentence would seem to mean that any time a conviction is overturned by a writ of habeas corpus there has been a final determination in favor of the accused. We are not convinced that this is what the *Humphrey* Court intended.

A federal court has broad discretion in conditioning a judgment granting habeas relief. *Hilton v. Braunskill,* 481 U.S. 770, 775, 107 S.Ct. 2113, 2118–19, 95 L.Ed.2d 724 (1987). It may dispose of the matter "as law and justice require," 28 U.S.C. § 2243, and may grant relief other than unconditional release. *Irvin v. Dowd,* 366 U.S. 717, 728–29, 81 S.Ct. 1639, 1645–46, 6 L.Ed.2d 751 (1961); *Mathis v. Hood,* 937 F.2d 790, 796 (2d Cir.1991). Although in some instances a habeas court may terminate a criminal proceeding in the defendant's favor, the reversal of a conviction and remand for a new trial does not constitute such a termination. *Russell v. Smith,* 68 F.3d 33, 36–37 (2d Cir.1995); *Brandley v. Keeshan,* 64 F.3d 196, 199 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 947, 133 L.Ed.2d 872 (1996). It was a writ of this nature that was granted in the instant case. *See* 932 F.2d at 1043 ("Upon any retrial of this case.... "). In view of the fact that in granting the writ this Court contemplated a retrial, which was held and resulted in a conviction for unlawful possession, a substantial issue in the case from its outset, we hold that the criminal proceeding terminated when DiBlasio was convicted on the retrial. The writ could not be considered an "indication of innocence" since DiBlasio conceded both the possession and sale of the cocaine.

We have expressed concern on several occasions about the possibility of a prosecutor securing an indictment for an easily provable minor offense and adding to it more serious charges with the hope that proof of probable cause on the lesser charge would insulate the prosecutor from liability for malicious prosecution on the unproved serious ones. *See, e.g., Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991). Of course, the purpose of a grand jury proceeding is to prevent this sort of thing from happening. *See Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962). Moreover, that clearly is not what occurred here.

Unlawful possession is not an easily-provable, misdemeanor-type offense. It is a felony. Moreover, on the first trial, the jury convicted DiBlasio of both unlawful possession and sale. Finally, while the separate offenses of unlawful possession and sale may be joined in the same indictment in the federal courts, *see United States v. Rodgers,* 732 F.2d 625, 629 (8th Cir.1984), the New York courts appear to concur in the oft-expressed view of Justice Brennan that all charges against a defendant growing out of a single criminal act, occurrence, episode or transaction should be prosecuted in one proceeding. *See People v. Lindsly,* 99 A.D.2d 99, 101–02, 472 N.Y.S.2d 115 (1984); *People v. Hopkins,* 95 A.D.2d 870, 871, 464 N.Y.S.2d 247 (1983)(mem.); *People v. Dean,* 56 A.D.2d 242, 246–47, 392 N.Y.S.2d 134 (1977), *aff'd,* 45 N.Y.2d 651, 412 N.Y.S.2d 353, 384 N.E.2d 1277 (1978).

In joining charges against DiBlasio in one indictment, the prosecution was following a practice approved, if not required, by the State. We doubt that a New York court would have permitted the connected acts of possession and sale to be charged in separate indictments. This does not change the fact that DiBlasio was charged with and convicted of unlawful possession of cocaine. The State's case did not end in failure or in DiBlasio's favor. We affirm the dismissal of the cause of action for malicious prosecution on that ground.

JACOBS, J., concurs in a separate opinion.

JACOBS, Circuit Judge, concurring in the result:

I concur in the majority's result, but write separately because I would reach it another way.

DiBlasio alleges that he was maliciously prosecuted for drug trafficking. According to the majority, that claim must fail for lack of a final determination in DiBlasio's favor because he was convicted on the (by far) lesser count of possession. But DiBlasio was *acquitted* on all charges of criminal sale of a controlled substance, and "[a]n acquittal is the most obvious example of a favorable termination." *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995). The majority's reliance on the lesser count conviction may be in tension with the reasoning of this Court in *Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991), and *Janetka v. Dabe,* 892 F.2d 187, 190 (2d Cir. 1989). In those cases, we highlighted the need to conduct a separate analysis of each charge the plaintiff claims was maliciously prosecuted, and voiced concern that a different rule might allow officers to "add unsupported serious charges to legitimate minor charges with impunity." *Janetka,* 892 F.2d at 190. In my view, DiBlasio's conviction on the lesser charge of possession does not necessarily bar his malicious prosecution claim as to the more serious charge of trafficking, on which he was acquitted.

I concur, however, in the dismissal of the malicious prosecution claim because DiBlasio cannot show any want of probable cause for the commencement of the criminal proceeding against him. *See Russell,* 68 F.3d at 36; *Posr,* 944 F.2d at 100. "In the context of a malicious prosecution claim, probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl,* 13 F.3d 625, 629 (2d Cir.1994) (citations and internal quotations omitted).

Although DiBlasio admits in his complaint that he made a series of cocaine sales to undercover police officers—conduct that ordinarily would create ample probable cause for a trafficking arrest and charge—he claims that any probable cause was "dissipated" by the entrapment. Specifically, DiBlasio alleges that he was beguiled into dealing drugs by Scotty, and that (implicitly) Scotty's conduct amounts to police entrapment because Scotty was an informant whose conduct should be imputed to the police. However, as described by the majority, Scotty testified that he offered DiBlasio *to the police* because DiBlasio was not "taking care of him." Thus Scotty's game was *to deceive the police* for his own purposes. In this situation, where the police were also duped by Scotty, Scotty's machinations cannot be imputed to the police for the purpose of determining whether the police lacked probable

cause for DiBlasio's arrest. Accordingly, I would hold that DiBlasio has failed to state a claim for malicious prosecution.

I also concur in the dismissal of the "failure to train" claims because these claims are time barred. Based upon testimony given at DiBlasio's retrial on January 15, 1992, DiBlasio had reason to know of the City's supposed failure to properly train its undercover police to his satisfaction. Since DiBlasio's complaint was filed on January 23, 1995, the failure to train claims are untimely.