**Richard INGERSOLL, As Executor of the Estate of Mary Ingersoll, Susan Cino and Alphonso Cino, Plaintiffs–Appellants,**

v.

**John E. LAPLANTE, Town of Livingston, County of Columbia, Richard Roe, Jane Smith, and Mary Jones, 1 through 10 (Fictitious names of agents and/or employees, whose identities are presently unknown), Defendants–Appellees.**

No. 02–9050.

United States Court of Appeals, Second Circuit.

Aug. 13, 2003.

Anthony M. Mahoney, New York, NY, for Plaintiffs–Appellants.

Victor Paladino, Assistant Solicitor General, Office of the Attorney General of the State of New York, Albany, NY, for Defendants–Appellees.

Present: ROSEMARY S. POOLER, ROBERT D. SACK, and RICHARD C. WESLEY, Circuit Judges.

## SUMMARY ORDER

In the fall of 1995, Alphonso and Susan Cino rented a house in Livingston, New York from Cornelia Johnson. Although the house came with a refrigerator, the Cinos owned their own unit. As the Cinos could not find a suitable place at the house to store Johnson's refrigerator, they gave it to Mary Ingersoll, Susan Cino's mother. The Cinos allege that Johnson said they could store the unit wherever they wanted.

After the Cinos vacated the house on February 7, 1996, Johnson learned that the refrigerator, as well as some curtains and window dressings, were missing. Johnson reported the alleged theft to the New York State Police, and New York State Trooper John E. LaPlante investigated. On February 8, 1996, Johnson told LaPlante that the respective items had been in the house when she rented it to the Cinos and that she never authorized them to remove the refrigerator from the house. LaPlante telephoned Susan Cino's

brother, Richard Ingersoll, who said that the Cinos had given the refrigerator to Mary Ingersoll, who knew where to reach them. LaPlante then telephoned Mary Ingersoll, who claimed that she did not know where the Cinos or the missing items could be found. That evening, LaPlante went to Mary Ingersoll's residence and, after advising her of her *Miranda* rights, asked her where he could find the missing refrigerator. Mary Ingersoll told LaPlante that "they had just brought it back to [Johnson's house]." She also told him that the refrigerator had been in her possession since October of 1995. LaPlante arrested Mary Ingersoll for criminal possession of stolen property in the fifth degree and issued her a summons to appear in Livingston Town Court. Shortly after he arrested Mary Ingersoll, LaPlante received a radio call that the refrigerator had been returned to Johnson's house.

LaPlante telephoned Alphonso Cino and informed him that he and his wife would be arrested for petit larceny if they did not make appointments to meet him at the Claverack State Police Barracks ("the barracks") to receive summonses. On February 11, 1996, Alphonso Cino met LaPlante and received an appearance ticket, but Susan Cino did not come to the barracks when LaPlante was on duty. Accordingly, Susan Cino was arrested on February 20, 1996. However, the charges against Mary Ingersoll and the Cinos were dismissed after the Columbia County District Attorney's Office failed to comply with the speedy trial requirements of New York Criminal Procedure Law § 30.30(1)(b).

■ Mary Ingersoll and the Cinos ("plaintiffs-appellants") filed the instant action under 42 U.S.C. § 1983 against LaPlante, the Town of Livingston, the County of Columbia, and other unknown officers.[1] Plaintiffs-appellants asserted claims for false arrest, false imprisonment, abuse of process, and malicious prosecution, and Susan Cino asserted a claim for excessive force. As the applicable state causes of action were time-barred, which plaintiffs-appellants do not dispute, the district court interpreted these claims as arising exclusively under federal law. Plaintiffs-appellants eventually discontinued their action against the County of Columbia, and the district court granted LaPlante's and the Town of Livingston's motion for summary judgment. Plaintiffs-appellants now appeal the district court's judgment with respect to LaPlante. As plaintiffs-appellants do not argue in their briefs that the district court erred in granting summary judgment to the City of Livingston, they have waived their right to appeal this issue. *See LoSacco v. City of Middletown,* 71 F.3d 88, 92–93 (2d Cir.1995).

■ We find that the district court correctly granted summary judgment to LaPlante with respect to plaintiffs-appellants' claims for false arrest, false imprisonment, and malicious prosecution, because LaPlante had probable cause to believe that they had committed their respective crimes, which is a complete defense to these claims.[2] *See Russell v. Smith,* 68

---

**1.** Mary Ingersoll died in July of 1999, and the executor of her estate, Richard Ingersoll, was substituted as a plaintiff.

**2.** While the complaint in this case is not a model of clarity, both Alphonso Cino and Mary Ingersoll arguably asserted claims for false imprisonment, which the district court did not consider. However, this issue is waived, as plaintiffs-appellants' briefs discuss

only the claims for false arrest, and not the claims for false imprisonment, with respect to Alphonso Cino and Mary Ingersoll. Regardless, these claims are meritless, because we find that LaPlante had probable cause to arrest Alphonso Cino and Mary Ingersoll.

F.3d 33, 36 (2d Cir.1995); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). "Probable cause ... exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir.1990) (citations omitted).

In the instant case, LaPlante received a report from Johnson that her refrigerator, which was in her house when she rented it to the Cinos, was missing the day after the Cinos vacated the premises. Johnson denied that she had given them permission to remove the refrigerator from the house, and LaPlante learned from Richard Ingersoll that the Cinos had given the refrigerator to Mary Ingersoll. Mary Ingersoll initially denied knowledge of the refrigerator's whereabouts, but subsequently admitted that she had had it in her possession. These facts constituted probable cause to arrest Mary Ingersoll on the charge of criminal possession of stolen property in the fifth degree, because "[a] person is guilty of criminal possession of stolen property in the fifth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof." N.Y. Penal Law § 165.40. Mary Ingersoll's apparent contradictory statements suggested that she knew the refrigerator was stolen. The facts also constituted probable cause to arrest Alphonso and Susan Cino for petit theft, because "[a] person is guilty of petit larceny when he steals property." N.Y. Penal Law § 155.25.

 Plaintiffs-appellants argue that Johnson gave them permission to remove the refrigerator from the house. While this may be true, LaPlante was entitled to rely upon Johnson's account. *See Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir.2000) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." (citations omitted)). Plaintiffs-appellants also argue that they returned the refrigerator and that LaPlante withheld this information from his application for a warrant to arrest Susan Cino. However, this fact would not have negated probable cause because it is not a defense to the respective charges. "[A] thief may not purge himself of guilt by giving back the plunder, before or after the arrest." *People v. Kaye*, 295 N.Y. 9, 13, 64 N.E.2d 268 (N.Y.1945). Plaintiffs-appellants argue that the Cinos had a "possessory interest as tenants in the refrigerator and the legal right to use the same throughout their tenancy." However, Johnson claimed that she never authorized the Cinos to remove the refrigerator from the house. Even accepting plaintiffs-appellants' argument, the facts suggested that the Cinos' tenancy expired on February 7, 1996, when they vacated the house.

 Finally, plaintiffs-appellants challenge Johnson's sworn written statement. Plaintiffs-appellants allege that LaPlante did not witness Johnson's statement and proffer a copy that does not bear his signature. However, the mere fact that LaPlante took Johnson's statement at 8:45 p.m. and arrived at Mary Ingersoll's house at 9:10 p.m. does not support this argument, as it is undisputed that it took LaPlante only fifteen minutes to drive from the barracks to Mary Ingersoll's residence. Regardless, the sworn statement was valid because Johnson signed the report, which contained "a form notice that false statements made therein are punishable as a class A misdemeanor pursuant to section

210.45 of the penal law." N.Y. Crim. Proc. Law § 100.30(1)(d). Although Johnson's statement was based upon information she received from her real estate agent, an affidavit in support of a warrant may be based on hearsay. *See United States v. Smith,* 9 F.3d 1007, 1013 (2d Cir.1993).

◾ We find that the district court correctly granted summary judgment to La-Plante with respect to plaintiffs-appellants' claims for abuse of process. The elements of such a claim are 1) the use of regularly issued legal process by the defendant to compel performance or forbearance of some act by the plaintiff, 2) with intent to do harm without excuse or justification, 3) in order to obtain a collateral objective that is outside the legitimate ends of the process. *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir.1994). Plaintiffs-appellants proffer no evidence that LaPlante acted with any unlawful purpose, harmful intent, or collateral objective.

◾ We also conclude that the district court correctly granted qualified immunity to LaPlante with respect to Susan Cino's claim for excessive force. The Supreme Court has stated the test for qualified immunity in situations such as the instant case as follows: "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Courts use a two prong-test to determine whether a law enforcement officer is entitled to qualified immunity. First, the court considers whether the facts, taken in the light most favorable to the plaintiff, establish that the defendant officer's conduct violated the plaintiff's constitutional rights. *Saucier v. Katz,* 533 U.S. 194, 200–01, 121 S.Ct. 2151,

150 L.Ed.2d 272 (2001). Assuming that a plaintiff's constitutional rights were violated, the court must then consider whether such constitutional rights were "clearly established." *Id.* at 201–02, 121 S.Ct. 2151. The relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. In other words, the court must consider whether a reasonable officer could have believed that his conduct was lawful. *Id. See also X–Men Security, Inc. v. Pataki,* 196 F.3d 56, 66 (2d Cir.1999) (holding that officials are entitled to qualified immunity if their actions were objectively reasonable in light of clearly established law).

◾ Susan Cino identifies no conduct that violated her constitutional rights. She complains that state troopers arrested her at 8:00 p.m. in front of her children and transported her in handcuffs to the barracks over the course of several hours in different patrol cars. However, there was probable cause for Susan Cino's arrest, which was effectuated by a police officer from the Town of Marlboro, and Susan Cino identifies nothing unlawful about having different troopers transport her through their respective patrol zones. She also identifies no conduct that constituted excessive force and does not dispute that she suffered only a single bruise that neither caused her pain nor required medical attention. Even were we to conclude that handcuffing Susan Cino and shackling her to the wall of the barracks violated her "clearly established" constitutional rights, the troopers' actions were objectively reasonable. While Susan Cino complains that LaPlante should have instead issued her an appearance ticket, she did not appear at the barracks when LaPlante was on duty. Regardless, the issuance of an appearance ticket "is committed to the sound discre-

tion of the police." *Mistretta v. Prokesch,* 5 F.Supp.2d 128, 137 (E.D.N.Y.1998).

We have considered plaintiffs-appellants' remaining arguments and find them to be meritless. Based upon the foregoing, we affirm the judgment of the United States District Court for the Northern District of New York.